Stephen **WILLIAMS** et al.

v.

Stanley K. **HATHAWAY** et al.

Civ. A. No. 75–2050–F.

United States District Court,
D. Mass.

July 11, 1975.

Jeanne Baker, Alan M. Dershowitz, Cambridge, Mass., Evan T. Lawson, Boston, Mass., John Reinstein, Civil Liberties Union, Boston, Mass., for plaintiffs.

Ansel Chaplin, Boston, Mass., for intervenors.

James O'Leary, Asst. U. S. Atty., Boston, Mass., for defendants.

## OPINION

FREEDMAN, District Judge.

This matter is before the Court on a complaint alleging that a regulation of

the Department of Interior banning nude bathing at the Cape Cod National Seashore is invalid. As originally filed the complaint sought both injunctive and declaratory relief; plaintiffs have now waived their claim for an injunction and seek only a declaration. The parties have stipulated to much of the factual material. The Court has taken a view of the area in question and has heard evidence on the issues of fact to which the parties could not agree. After careful consideration of the affidavits and testimony and of the briefs of counsel, the Court hereinafter enters its findings of fact and conclusions of law.

1. The Cape Cod National Seashore ("Seashore") is a national park established in 1959 by P.L. 87–126 (16 U.S.C. § 459 et seq.). It comprises in part beaches, dunes and adjacent land located in the towns of Provincetown, Truro, Wellfleet, Eastham, Orleans and Chatham in the Commonwealth of Massachusetts. It includes within its limits private homes, which are not subject to condemnation. A map of the Seashore is attached hereto as Exhibit A and incorporated herein by reference.

2. Ten of the twelve plaintiffs are residents of towns located on Cape Cod whose homes are within or near the Seashore (three of them live within the Seashore limits). Two plaintiffs are residents of other Massachusetts areas. All plaintiffs are regular summer users of the beaches located within the Seashore; all plaintiffs have engaged in and wish to continue to engage in the practice of public nude bathing within the Seashore.

3. The original defendants are the several federal officials charged with responsibility for the supervision of the Seashore, and empowered to promulgate and enforce regulations pertaining to the use thereof.

4. The defendant-intervenor Truro Neighborhood Association ("TNA") is an unincorporated organization whose members own or occupy property within the Town of Truro, Massachusetts.

TNA's by-laws provide that it was organized "to provide an agency for the free exercise of the needs of the people of the community as a whole and to provide an opportunity to formulate and execute plans to improve the quality of living within the total community." Currently, TNA has more than 300 members, of whom at least one-half are summer residents. Approximately 100 TNA members own improved property within the boundaries of the Seashore. Of these, approximately 30 own houses along North and South Pamet Roads or Collins Road.

5. The United States Secretary of the Interior ("the Secretary"), pursuant to the authority of 16 U.S.C. § 3, promulgated a regulation effective May 19, 1975 (36 C.F.R. Part 7, § 7.67) ("the Regulation"), which provides as follows:

Public nudity, including public nude bathing, by any person on Federal land or water within the boundaries of Cape Cod National Seashore is prohibited. Public nudity is a person's intentional failure to cover with a fully opaque covering that person's own genitals, pubic areas, rectal area, or female breast below a point immediately above the top of the areola when in a public place. Public place is any area of Federal land or water within the Seashore, except the enclosed portions of bathhouses, restrooms, public showers, or other public structures designed for similar purposes or private structures permitted within the Seashore, such as trailers or tents. This regulation shall not apply to a person under 10 years of age.

6. Long before the creation of the Seashore in 1959, nude bathing by individuals or small groups was an established and accepted practice along the Atlantic beach. Summer visitors engaged in nude bathing without governmental interference at numerous remote locations scattered along the beach fronts between established town beaches (called town "landings"). When the federal government acquired these

beaches, the Park Service made no attempt to actively interfere with nude bathing at such areas.

7. During the 1960's one of the areas historically used for nude bathing within the Seashore in Truro, and loosely known as Brush Hollow, was characterized by public nude bathing in which nude persons of both sexes congregated to bathe and sun themselves. This beach area begins approximately one mile south of Ballston Beach—the Truro town beach.

8. There are four overland access routes to the Brush Hollow beach area. (Since private vehicles are not allowed on the. beach during normal swimming and tanning hours, the public can only reach Brush Hollow on foot.) One route is to walk approximately one mile south from Ballston Beach along the Atlantic Ocean. A second route involves leaving South Pamet Road (the public way which leads to Ballston Beach from the south) at a curve approximately 250 yards east of the shoreline and walking southeasterly for approximately three-quarters of a mile. This route takes one across private property and then across federal property. The third route is to walk from Collins Road a distance of at least one mile due east toward Brush Hollow. The fourth route is to walk about two to three miles north along the Atlantic Ocean from the Town Landing in Wellfleet known as Newcomb Hollow Beach.

9. The beach area at Brush Hollow has been designated by the Park Service as a "natural environment area." Like many other beach areas in the Seashore which are open to the public, it is not classified as a "managed" beach; that is, it does not have lifeguards, bath houses, waste containers, sanitary facilities or public parking. Because Brush Hollow is located relatively far from any road, there are no public parking facilities of any sort within approximately one mile of the beach. The Town of Truro maintains and has maintained for many years public parking spaces for approximately eighty (80) cars at the entrance to Ballston Beach.

10. The public nude bathing which occurs at Brush Hollow does not occur within sight of persons swimming and sunning at Ballston Beach.

11. During the 1973 and 1974 summer seasons, the level of use of Brush Hollow was substantially greater than it had been in previous summers. It has been estimated by the National Park Service that the average daily use of that area was 316 persons between August 15 and September 6, 1974, with a peak of 1200 on August 25, 1974. This level of use was a significant increase over 1973. During these two summers there was increased automobile traffic on Collins Road, North Pamet Road and South Pamet Road; parking congestion occurred on the Pamet and Collins Roads, at the Ballston Beach parking area, and in and around Truro town center. The increased level of use of Brush Hollow was a significant factor in such traffic and parking problems.

12. Data was collected by Park Service Rangers as to parking problems on Collins Road from August 15 through September 1, 1974. During the 18-day period, a total of 1248 automobiles were noted parked at the roadside, or on or beyond the road shoulders. The daily totals varied from a low of seven on August 29 to a high of 175 on August 25.

13. There was exhaustive evidence by way of affidavits submitted by defendants and defendant-intervenors attesting to the environmental damage and littering which have followed in the wake of the increased popularity of nude bathing at the Seashore. While the residents of the Brush Hollow area seemed more concerned with parking problems on the Pamet Roads and Collins Road, many of their affidavits alluded to the increased littering and destruction of flora on private property and along the public roads. Several of the Park Service personnel submitted affidavits which recounted specific instances of environmental damage within the area of heavi-

est nude bathing use. Of particular interest to the Court was the affidavit of Paul J. Godfrey, an assistant professor of Botany at the University of Massachusetts. Mr. Godfrey is Leader of the National Park Service—University of Massachusetts Research Unit. This unit is conducting ecological studies at a site in the Brush Hollow area. He concluded, *inter alia,* that the approach to Brush Hollow over the dunes ". . . can, and has, led to environmental problems." This conclusion was supported by observations and experiments carried out at the high dunes area above the beach.

14. In response to the 1974 increase in use of the Brush Hollow area and the accompanying problems of traffic and parking congestion, representatives of the Truro community, including officers of the TNA, urged officials of the Seashore to take corrective action. The Park Service commenced a review of the problem and of the available alternative solutions. In December, 1974, the Northeast Region of the National Park Service published a document entitled "Management Alternatives Addressed To Nude Bathing and Related Concerns" ("Management Alternatives"), and in February, 1975, a Supplement to that document was published. Together these documents outlined eight separate alternatives.

Alternative 1 calls for a total ban of nudity within the Seashore. Among the other alternatives considered are the following:

Accommodate nude bathing at one or more existing developed beaches under Seashore management. (Alternative 5)

Provide for public use at Brush Hollow area through operation and management other than with direct National Park Service involvement, such as a concession or special use permit with the Town of Truro subject to an agreement for eventual land exchange. (Alternative 4)

Develop Brush Hollow as a Seashore managed beach with provisions for water, comfort stations, sewage disposal, trash pickup, lifeguard and Ranger services. (Alternative 6)

Develop Brush Hollow Beach as a managed beach with minimal facilities either by National Park Service or jointly with the Town of Truro. (Alternative 7)

Provide for continued use at Brush Hollow at a level consistent with the Management Objectives for Class III Lands. (Alternative 8)

15. Defendant Hadley testified that the Park Service would have had to take action at some point since the high dune area at Brush Hollow was being damaged by the increased number of bathers using this access to the beach. TNA's interest in the matter only served to speed up what Hadley viewed as an inevitable course. The Court observed some of this dune damage during its view of the Brush Hollow area.

16. In November, 1974, the Cape Cod National Seashore Advisory Commission issued a report concluding that Alternative 1 was the only effective option available to the Park Service at this time.

17. The defendants have publicly declared their intention to enforce the Regulation. The methods of enforcement include the issuance of warnings, the issuance of citations for appearance before a federal magistrate, arrest under 16 U.S.C. § 10, and imposition of criminal penalties under 16 U.S.C. § 3, which provides that violators shall be punished by a fine of not more than five hundred dollars ($500.00), or imprisonment not exceeding six (6) months, or both, and costs.

18. All parties agree that the issue is not a moral one and that it is not nudity per se, but the attraction of the nude beach, which precipitated the conditions leading to the action of the Department of Interior.

### Conclusions

The threshold inquiry here involves the extent of protection, if any, that the Constitution affords nude bathers who congregate on a semi-isolated stretch of federal beach land used traditionally for such purposes. More specifically, to what extent is this conduct protected by the First Amendment's guarantees of free speech and association or the right of personal liberty as found within either the Fifth, Ninth, or the "penumbras" of the First Amendment?

■■■ The fact that these persons swim or bathe in the nude does not in and of itself make their conduct obscene and thus undeserving of First Amendment protection. *Jenkins v. Georgia,* 418 U.S. 153, 161, 94 S.Ct. 2750, 41 L. Ed.2d 642 (1974); *Manual Enterprises v. Day,* 370 U.S. 478, 490, 82 S.Ct. 1432, 8 L.Ed.2d 639 (1962). On the other hand, there is little in plaintiffs' conduct that merits First Amendment protection. While there may be an element of non-verbal expression inherent in nude bathing, its communicative character is less perceptible than defendants' display of the red flag in *Stromberg v. California,* 283 U.S. 359, 51 S.Ct. 532, 75 L.Ed. 1117 (1931), or the donning of black armbands by students in *Tinker v. Des Moines Independent Community School District,* 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969), which were entitled to full First Amendment protection. The message is also less distinct than that communicated by the defendant in *United States v. O'Brien,* 391 U.S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968), who burned his draft card on the steps of the South Boston Courthouse. That conduct was protected by the First Amendment albeit to a slightly lesser degree than the conduct in *Stromberg* and *Tinker.*

Plaintiffs' conduct here is more akin to that of the student-plaintiff in *Richards v. Thurston,* 424 F.2d 1281 (1st Cir. 1970), who asserted a First Amendment right to wear his hair long. There is little to distinguish the two acts, both of which are fundamentally individualistic and personal rather than expressive or communicative. In *Thurston, supra,* the Court "reject[ed] the notion that plaintiff's hair length is of a sufficiently communicative character to warrant the full protection of the First Amendment." *Id.* at 1283 (citations omitted). There is no reason why this Court should decide the present matter any differently.

■■■ Nor does freedom of association provide the protection which plaintiffs seek. "While the freedom of association is not explicitly set out in the [First] Amendment, it has long been held to be implicit in the freedoms of speech, assembly, and petition." *Healy v. James,* 408 U.S. 169, 181, 92 S.Ct. 2338, 2346, 33 L.Ed.2d 266 (1972) (citations omitted). *See, Williams v. Rhodes,* 393 U.S. 23, 89 S.Ct. 5, 21 L.Ed.2d 24 (1968); *NAACP v. Alabama,* 357 U.S. 449, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958). "The right of 'association,' like the right of belief (*Board of Education v. Barnette,* 319 U.S. 624, [63 S.Ct. 1178, 87 L.Ed. 1628]), is more than the right to attend a meeting; it includes the right to express one's attitudes or philosophies by membership in a group or by affiliation with it or by other lawful means." *Griswold v. Connecticut,* 381 U.S. 479, 483, 85 S.Ct. 1678, 1681, 14 L.Ed.2d 510 (1965).

In *Bruns v. Pomerleau,* 319 F.Supp. 58 (D.Md.1970), the plaintiff, a practicing nudist and nudist club member, was refused employment as a policeman solely because of his nudist activities. The Court held that this refusal, without proper justification, violated plaintiff's "constitutional right to associate with other nudists when his actions are in conformity with valid state statutes." 319 F.Supp. at 65. Yet the facts here are different. Plaintiffs do not claim that they go to Brush Hollow for organizational or associational purposes. No plaintiff claims to be a member of a nudist organization which meets at this beach. Their purpose and intent is

more individualistic than associational. While nude bathers may find comfort in numbers, those numbers have not been caused by a conscious, collective effort to seek out other nudists but are merely the result of a heretofore tolerant attitude toward nudity at this beach. Consequently, the Court is reluctant to say that plaintiffs' associational rights are being infringed here.

Much of this discussion has stressed the privacy and individualism of plaintiffs' activities. When viewed in this light, plaintiffs' strongest claim is their contention that they have a personal liberty right, protected by the Constitution, to bathe in the nude at Brush Hollow.

■ Although it matters little where this substantive right is found in the Constitution, I hold that it does exist and find its base in the concept of liberty as protected by the Due Process Clause of the Fifth Amendment. ". . . [I] believe that the Due Process Clause . . . establishes a sphere of personal liberty for every individual, subject to reasonable intrusions by the [government] in furtherance of legitimate [governmental] interests." *Richards v. Thurston, supra,* 424 F.2d 1284 (footnote omitted). Such liberty is simply the right of the ". . . people to be let alone in the governance of those activities which may be deemed uniquely personal." *Id.*

"Personal liberty is not composed simply and only of freedoms held to be fundamental but includes the freedom to make and act on less significant personal decisions without arbitrary government interference." *Dwen v. Barry,* 483 F.2d 1126, 1130 (2d Cir. 1973). Indeed, the personal right to bathe in the nude on a beach like Brush Hollow is not of such significance that it can be considered a fundamental right. Its existence at all is derived from the fact that this secluded beach has traditionally been held out as a "nude beach" and there is little chance that passers-by will be subject to plaintiffs' activities.

In arriving at this conclusion, it was necessary to examine the theories of public versus private nudity. It is undoubted that public nudity can be banned. *Erznoznik v. City of Jacksonville,* 422 U.S. 205, 95 S.Ct. 2268, 45 L. Ed.2d 125 (1975) (Chief Justice Burger, dissenting). On the other hand, an individual has "the right to appear au naturel at home." *Richards v. Thurston, supra,* 424 F.2d at 1285. The essential difference between the two is not the ownership of the situs of the nudity, but the privacy of the act itself so as not to offend others.

■ The present case does not fall precisely within the sphere of either rule. Analysis of the problem cannot end by simply stating that Brush Hollow is a federal beach open to all members of the public because it is, in fact, a remote piece of land rarely frequented by the general public. Thus it must be distinguished from nudity in public streets, most parks, and indeed, most beaches. Its special character as a traditional "nude beach" also distinguishes it from most public areas. Yet the public ownership of the land cannot be ignored. Taking all these factors into account, the Court is of the view that nude bathing at Brush Hollow is entitled to some constitutional protection. Plaintiffs have succeeded in establishing for this limited area a narrow zone of personal liberty.

The Court has undertaken to analyze the nature of the constitutional right asserted by plaintiffs. I have concluded that while it is a novel claim some measure of constitutional protection must be afforded the traditional practice of nude bathing at Brush Hollow.[1] Whether

---

1. The Court has limited any constitutional protection to Brush Hollow Beach since that was the only area which was shown by plaintiffs to be a nude beach by tradition and custom.

that right has been impermissibly infringed by the promulgation and enforcement of the challenged regulation is the question to which the Court now turns.

The framework for analyzing the issue presented by this case is found in the First Circuit case, *Richards v. Thurston, supra.* Having determined ". . . that a personal liberty is involved," the Court now focuses its attention on ". . . whether there is an outweighing [governmental] interest justifying the intrusion. The answer to this question must take into account the nature of the liberty asserted, the context in which it is asserted, and the extent to which the intrusion is confined to the legitimate public interest to be served." *Richards, supra,* 424 F.2d at 1285.

The nature of the liberty asserted by plaintiffs has been discussed at length in an earlier section of this opinion. In sum, it clearly cannot be construed as fundamental, and, in fact, would appear to be the furthest extension that this doctrine has heretofore seen.

The intrusion in this case is complete —a total ban of the protected conduct. However, this complete ban should be viewed in the context of the narrow liberty asserted. Whether this "intrusion is confined to the legitimate public interest to be served," as required by the *Richards* case, depends upon a careful balancing of the interests of parties.

The government offers several reasons for adopting the concededly broad means of dealing with the problems at the Seashore. As can be seen from my discussion of the facts, the difficulties at the nude beach and surrounding area were manifold. There were environmental problems including dune damage, litter, sanitation, destruction of plant life, etc. Further, there were severe parking problems at the public lots and along the Truro roads as well as extensive trespassing of private property by those who would use the nude bathing area.[2]

A further matter worthy of consideration is the fact that the specific nude beach area at Brush Hollow is part of the land which had been classified as "natural environment area." The large crowds of the past two years at Brush Hollow which were precipitated by the publicity that nude bathing has received contrasts sharply with the characteristically underutilized facilities at the six managed beach areas. These managed beaches are classified in the Master Plan for the Seashore as "general outdoor recreation areas" and are intended for heavier use than are "natural environment areas."[3] Although swimming is permitted in Natural Environment Areas, these areas are not intended to accommodate the large numbers of bathers attracted to Brush Hollow during the past two years. As defendant Hadley, Superintendent of the Seashore, stated in his affidavit:

> The level of use at Brush Hollow Beach is contrary to the intent and purposes of the Land Classification established for it. Affidavit at 7.

2. While the elimination of trespassing on private land would not seem in the usual course to be a function of the federal government in the administration of the National Park System, the Seashore includes such improved private property and Congress specifically provided in the enabling legislation:

> In developing the seashore the Secretary shall provide public use areas in such places and manner as he determines will not diminish for its owners or occupants the value or enjoyment of any improved

property located within the seashore. 16 U.S.C. § 459b–6(b)(2).

There was ample evidence by way of affidavit that would indicate that the enjoyment of the private property owners in the Brush Hollow area had indeed been diminished.

3. It is true that areas may be reclassified, but in view of the planning and preparation which culminated in the designation of these areas in the Master Plan, the present classifications are entitled to considerable weight.

The Master Plan contemplates its continuance as an area free of physical developments, reserved essentially, for solitary use and personal enjoyment of its unique natural qualities. Affidavit at 9.

Plaintiffs contend that *Richards* requires that less restrictive means must be used when available where a recognized liberty is being infringed. This Court reads *Richards* as setting up a balancing test which permits a flexible approach so long as it is reasonably designed to meet the perceived problem.

Plaintiffs assert that each of the problems raised by defendants in support of the regulation could be addressed through alternative means. For example, the parking problem could be handled by strict enforcement of the parking and towing regulations; dune damage could be alleviated by carefully drawn and enforced regulations. Littering, trespassing, damage to plant life—all, plaintiffs contend, admit of specific solutions to the specific problems. As appears in the findings of fact these alternatives were considered and judged to be ineffective in dealing with the multifaceted situation created by the increased popularity of nude bathing.

The Court agrees with plaintiffs that it may well be that each of the problems created by nude bathing could have been separately handled and perhaps successfully so. However, it does not seem that the "nature of the liberty asserted," while it is admittedly entitled to some protection, is of such constitutional moment as to require an invalidation of the regulation, especially in light of the array of serious difficulties which led to its adoption.

Plaintiffs argue that, had the Brush Hollow Beach simply attracted large numbers of minority group members, defendants would not have been permitted under the Constitution to have excluded only such minorities. The analogy is inapposite for a host of reasons. Suffice it to say that the right asserted by a minority group would be of a fundamental nature and one which would merit far greater constitutional protection than that asserted by plaintiffs in this case.

The Court concludes that the regulation banning nude bathing at the Seashore is adequate to withstand the constitutional challenge of plaintiffs. It was carefully conceived action taken in the face of a complex series of problems which confronted defendants and those whose interests defendants are charged by law to protect. While the Court found some protection for the right asserted by plaintiffs, it appears clear that this narrow liberty has been outweighed by the considerations which led defendants to adopt the regulations.

Judgment is hereby entered for the defendants.

## ORDER

After the trial of this case and while it was under advisement, the Court received an *amicus curiae* brief and an appropriate motion for leave to file the brief from John F. Banzhaf, III, Esq. This brief raised the issue of whether defendants had complied with the National Environmental Policy Act in promulgating the regulation which was the subject of this suit. Plaintiffs filed a motion to amend their complaint to reflect the position of the *amicus*. Defendants opposed the motion to allow the brief.

While the Court appreciates the interest and diligence of Mr. Banzhaf, it considers that the issue was raised too late in the proceedings to permit its full development. Accordingly, the motions of the *amicus curiae* and of plaintiffs are denied.

EXHIBIT A

Provincetown

Truro

FREE BEACH
BALLSTON BEACH AREA

cape

cod

bay

Wellfleet

US 6

Eastham

Orleans

6A

6A

US 6

134

Brewster

124

28

Harwich

39

28

Chatham

atlantic ocean

REGIONAL MAP
Cape Cod National Seashore

2  0  2  4  6
scale in miles