OPINION OF THE COURT
Titone, J.
Defendant was twice arrested and charged under Penal Law § 245.01 (unlawful exposure) for sunbathing nude on the beach at Riis Park, Bay 1, in Queens County.[1] He contests his ensuing convictions on several constitutional grounds: violation of his right to freedom of expression, the statute’s over-breadth, and deprivation of a fundamental right. We conclude that defendant’s Federal and State[2] constitutional rights have not been violated.
I
Over a period of years, Riis Park, Bay 1, had informally come to be known as a "clothes optional” beach. The police had received numerous complaints of nudism from local residents, civic associations, elected officials and visitors to the beach. One of defendant’s arrests occurred after a police officer viewed him through binoculars from a nearby nursing home. The other arrest occurred when an officer arrived on the beach to investigate an unrelated complaint. At the time of each arrest, defendant was sunbathing without clothes in the company of his wife and two small children.
Defendant’s motion to dismiss the charges asserted his belief in the Naturist philosophy that open social nudity promotes health, that it permits heightened awareness of human similarity and vulnerability and that it presents an alternative to the repression of puritanism and the degrada *205 tian of pornography. He argued that the application of Penal Law § 245.01 to his conduct improperly denied him his State and Federal constitutional rights to free expression (US Const 1st Amend; NY Const, art I, § 8), that Penal Law § 245.01 was overbroad, and that he was denied fundamental liberty and privacy rights. Criminal Court denied the motion.
After a Bench trial, defendant was convicted of two violations of Penal Law § 245.01. Appellate Term affirmed, concluding that defendant’s conduct did not fall within any cognizable constitutional protection. We agree.
II
Initially, defendant urges that his nudity, in the context of its location and his beliefs, constituted symbolic expression and, thus, was entitled to protection. For two reasons, this argument must fail. First, defendant’s conduct did not rise to the level of communication necessary to invoke constitutional protection. Second, even if defendant’s actions were expressive, the State had the power to regulate such expression by prohibiting the public display of nudity.
A
Certainly it is beyond dispute that expressive conduct, in addition to pure speech, is entitled to the protective shield of the First Amendment (Nimmer, Meaning of Symbolic Speech Under the First Amendment, 21 UCLA L Rev 29, 30). " 'If there is any fixed star in our constitutional constellation, it is that no official, high or petty, can prescribe what shall be orthodox in * * * matters of opinion’ ” (Street v New York, 394 US 576, 593, quoting Board of Educ. v Barnette, 319 US 624, 641-642). Thus, the Supreme Court has invoked the First Amendment to protect symbolic speech such as refusing to salute the American flag (Board of Educ. v Barnette, supra), wearing a black arm band in the context of a Viet Nam war protest (Tinker v Des Moines School Dist., 393 US 503) and displaying a peace symbol on a privately owned flag (Spence v Washington, 418 US 405).
That particular forms of conduct have been deemed expressive and thus entitled to protections akin to those afforded speech, however, does not imply that all conduct intended to convey a message is expressive (United States v O’Brien, 391 US 367, 376; Nimmer, Meaning of Symbolic Speech Under the *206 First Amendment, 21 UCLA L Rev 29, 36). To be characterized as expressive, the conduct must be intended to convey a particularized message and there must be a great likelihood that, given the surrounding circumstances, the message would be understood by those who viewed it (Clark v Community for Creative Non-Violence, 468 US 288, 294; Spence v Washington, supra, pp 410-411). In Spence, for example, the defendant, upset by the shootings at Kent State and the country’s invasion of Cambodia, displayed an American flag with a peace symbol superimposed upon it. The court held such conduct to be protected, noting that the defendant had displayed the flag in "the manner in which flags have always been used to convey ideas” (Spence v Washington, supra, p 415). By way of contrast, the Supreme Court has noted that conduct that is ordinarily nonexpressive, such as gambling, setting off fireworks or urinating in public, may be regulated "regardless of the situs,” even though the actor’s intention may have been expressive (Clark v Community for Creative Non-Violence, supra, p 298, n 7).
Defendant’s conduct in this case clearly falls within the latter category. While there may be contexts in which a public display of nudity would reasonably be understood as a means of communicating an idea, it cannot be said that nude sunbathing on a beach is a form of expression likely to be understood by the viewer as an attempt to convey a particular point of view. Although defendant apparently has a specific philosophy regarding nudism, his mere nude appearance did not create a great likelihood that his philosophy would be imparted to the public. Rather, the likely message to viewers was that defendant, like many others on the beach, had doffed his clothing to enhance his comfort, acquire an even tan or simply display his body to others. Such conduct cannot be considered sufficiently expressive to invoke the protections of the First Amendment and article I, § 8 of the New York State Constitution merely because its setting was a beach where nudity is commonplace.
B
Even were we to assume that defendant’s conduct was expressive, the State’s ability to regulate it or even prohibit it would not be automatically foreclosed. It is clear that the First Amendment does not guarantee the right to declare one’s opinion in any place, at any time and in any manner *207 (e.g., Heffron v International Socy. for Krishna Consciousness, 452 US 640, 647; Erznoznik v City of Jacksonville, 422 US 205, 209; Matter of von Wiegen, 63 NY2d 163, 171, cert denied 472 US 1007; People v Bakolas, 59 NY2d 51). Thus, conduct may be regulated, or even prohibited, "if [the regulation] is within the constitutional power of the Government; if it furthers an important or substantial governmental interest; if the governmental interest is unrelated to the suppression of free expression; and if the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest” (United States v O’Brien, 391 US 367, 377, supra; see, Clark v Community for Creative NonViolence, 468 US 288, 297-299, supra; Heffron v International Socy. for Krishna Consciousness, supra, pp 647-648, quoting Virginia Pharmacy Bd. v Virginia Consumer Council, 425 US 748, 771; Note, Clark v Community for Creative Non-Violence: The Demise of First Amendment Protection for Symbolic Expression% 36 Mercer L Rev 1371, 1397).
Viewed against this standard, Penal Law § 245.01 is unquestionably a permissible regulation as applied to defendant’s conduct, even if it did incidentally impinge upon his chosen form of self-expression. First, prohibiting public nudity is plainly within the State’s police powers. Second, the statute is not aimed at suppressing the expression of opinion concerning nudity; instead, it neutrally prohibits all public displays of nudity regardless of the actor’s purpose.
Third, the statute furthers an important governmental objective. Riis Park is a public beach dedicated to the recreation of the public, including New York families. Congress, in its wisdom, set aside all of Riis Park for that purpose. The effect of the nude sunbathers’ repeated appearance at Bay 1 was to foreclose its use by others. The Legislature saw fit to remedy the possible crowding of surrounding beaches by prohibiting nudity altogether. There is clearly an important governmental interest in providing recreational space for the citizens of this State. Moreover, the State clearly has an interest in preserving the character of Riis Park for its intended use (see, Clark v Community for Creative Non-Violence, supra) and preventing uses antithetical to its essential nature (see, Grayned v City of Rockford, 408 US 104, 116).[3]_
*208 Finally, Penal Law § 245.01, as applied, is as narrow as it can be in order to fulfill its governmental objective. Significantly, the statute prohibits only public nudity and does not impair defendant’s right to advocate Naturism by some other means. And, while it may be argued that the shock of nudity was the most effective method of conveying defendant’s philosophy, no one is guaranteed a right to what he considers to be the best of all means of expression, as long as the freedom to express an idea is protected (see, e.g., Kovacs v Cooper, 336 US 77 [statute banning the use of sound trucks upheld where other means of publicity available]).
¡II
Defendant’s next contention is that Penal Law § 245.01 is overbroad in that it prohibits clearly protected activity such as nude modeling for an art class or classroom demonstrations involving human genitalia (see, Penal Law § 240.00 [1] [defining "public place” to include schools]). Thus, he argues, he may challenge the constitutionality of the statute on its face even if his conduct did not fall within the class of protected activities. This claim, too, must fail, as any arguable over-breadth of this statute is insubstantial.
As a general rule, a defendant cannot challenge the constitutionality of a statute on the ground that its application to others could impair their constitutional rights. An exception to this rule exists in instances where the statute’s facial ability to reach protected conduct is so broad that its continued application may chill the lawful exercise of citizens’ right to freedom of speech (Secretary of State of Md. v Munson Co., 467 US 947, 956-957; Dombrowski v Pfister, 380 US 479, 486; Thornhill v Alabama, 310 US 88, 97-98; 3 Rotunda, Nowak and Young, Constitutional Law — Substance and Procedure § 20.8).
This exception is applied, however, only when the statute’s unconstitutional reach is substantial and the statute is incapable of a reasonable limiting construction (Erznoznik v City of Jacksonville, 422 US 205, 216, supra; Broadrick v Oklahoma, 413 US 601). As the Broadrick court noted (p 615), "Although * * * laws, if too broadly worded, may deter protected speech to some unknown extent, there comes a point where that *209 effect — at best a prediction — cannot, with confidence, justify invalidating a statute on its face and so prohibiting a State from enforcing the statute against conduct that is admittedly within its power to proscribe”. Indeed, while it may be true that the expression of overly cautious citizens preferring to stay far away from the reaches of the law may be chilled by even the most carefully drawn statute, few of our criminal statutes would survive judicial scrutiny if they could be stricken because of a remote possibility that they might, as applied to an unusual set of facts, reach protected conduct (Note, First Amendment Overbreadth Doctrine, 83 Harv L Rev 844, 859, n 61).
There may be occasion when constitutionally protected activity will be reached because of the broad range of the statute prohibiting public nudity (see, Penal Law § 240.00 [1]). However, the requirement that overbreadth be substantial is properly used to save a statute which may reach some protected conduct while prohibiting a whole range of easily identifiable and constitutionally proscribable conduct (Secretary of State of Md. v Munson Co., 467 US 947, 964-966, supra; New York v Ferber, 458 US 747, 772; United States Civ. Serv. Commn. v Letter Carriers, 413 US 548, 580-581). Where, as here, the impermissible applications of a statute represent only a tiny fraction of the conduct within the statute’s reach, the overbreadth will not be considered substantial (New York v Ferber, supra, p 773). Moreover, the aspects of the statute that reach arguably protected conduct may readily be severed from those that are aimed at constitutionally proscribable conduct such as defendant’s. Hence, defendant cannot rely on the statute’s potentially unconstitutional reach as a basis for challenging his own conviction.
IV
Finally, defendant makes various claims that suggest he is asserting a fundamental right to appear nude in public. There is, however, no such fundamental right.
In Meyer v Nebraska (262 US 390, 399), the Supreme Court described the nature of rights encompassed by the Fourteenth Amendment liberty guarantee, stating "[wjithout doubt, it denotes not merely freedom from bodily restraint but also the right of the individual to contract, to engage in any of the common occupations of life, to acquire useful knowledge, to marry, establish a home and bring up children, to worship *210 God according to the dictates of his own conscience, and generally to enjoy those privileges long recognized * * * as essential to the orderly pursuit of happiness by free men.” The fundamental rights implicit in the Fourteenth Amendment have been expanded since Meyer was written (see, e.g., Roe v Wade, 410 US 113; Shapiro v Thompson, 394 US 618), but no court has gone so far as to suggest that that Amendment guarantees the unbridled right to conduct oneself in public in any manner regardless of how offensive it may be (cf. People v Onofre, 51 NY2d 476, 489 [distinguishing between public and private morality]). Since it cannot seriously be argued that public displays of nudity are essential to an ordered system of liberty, we decline to recognize such conduct as within our citizens’ fundamental rights.
Accordingly, defendant’s constitutional rights were not violated by his conviction under Penal Law § 245.01, and the order of the Appellate Term should be affirmed.
Chief Judge Wachtler and Judges Meyer, Simons, Kaye, Alexander and Hancock, Jr., concur.
Order affirmed.

. Penal Law §245.01 states: "A person is guilty of exposure if he appears in a public place in such a manner that the private or intimate parts of his body are unclothed or exposed. For purposes of this section, the private or intimate parts of a female person shall include that portion of the breast which is below the top of the areola. This section shall not apply to the breastfeeding of infants or to any person entertaining or performing in a play, exhibition, show or entertainment”.

. While case law indicates that greater free speech protections may be available pursuant to NY Constitution, article I, §8, than from the First Amendment (PruneYard Shopping Center v Robins, 447 US 74; SHAD Alliance v Smith Haven Mall, 66 NY2d 496, 500; People v Ferber, 57 NY2d 256; Bellanca v State Liq. Auth., 54 NY2d 228, cert denied 456 US 1006), the conduct involved here is not entitled to that greater protection (see, People v Ferber, supra, p 259).

. In concluding that the State’s interest in this case is important enough to justify incidental limitations of expression, we do not reach the issue of whether mere esthetics are a substantial enough governmental *208 objective to allow interference with speech under NY Constitution, article I, § 8 (see, City Council v Taxpayers for Vincent, 446 US 789).