OPINION OF THE COURT
Herman J. Walz, J.
On June 21, 1986, defendants participated in a demonstration in Cobbs Hill Park, a public park within the City of Rochester. They removed their shirts and uncovered their chests to protest what they view as sexist and repressive laws which permit men, but not women, to appear with bare chests in public places. The defendants were arrested and charged with violating Penal Law § 245.01, which imposes criminal sanctions on women for exposing their breasts below the top of the areola, in a public place.
Defendants move to dismiss the information on several constitutional grounds. Defendants contend that the statute violates their right to equal protection of the laws, and to freedom of expression. They also contend that the statute is void for vagueness, and that it deprives them of a fundamental human right under the US Constitution 9th Amendment. I conclude that the statute is constitutional. However, I also conclude that as applied to defendants’ conduct in this particular case the statute violates their rights to free expression as guaranteed by the Federal and State Constitutions. Thus, although the statute withstands these constitutional challenges on its face, as applied here it violates defendants’ rights. Although no evidentiary hearing was held on the motion to dismiss, the court considered the evidence adduced at the trial in determining the motion, on which decision had been reserved. The motion to dismiss the information is now granted.
I. EQUAL PROTECTION
Under the Penal Law only females can be convicted for exposure of the breasts. Indeed, the section was originally titled "Exposure of a female”. Curiously, the law originally prohibited the exposure of a female’s breasts, but not her genital area. The statute was directed at curbing the phenomenon of topless waitresses. Since it is clear from the cases that nudity by itself does not constitute lewdness (Matter of Excelsior Pictures Corp. v Regents of Univ. of State of N Y., 3 NY2d *123 237; People v Burke, 243 App Div 83, affd 267 NY 571; People v Hardy, 77 Misc 2d 1092; People v Gilbert, 72 Misc 2d 75), the law in this State before 1983 allowed men or women to appear on a beach without bathing suit bottoms, but required women to leave their tops on. In an effort to eliminate nude beaches, the law was amended in 1983 to forbid the exposure in a public place of the "private or intimate parts” of a person. To this extent the statute was gender neutral. However, the statute contained a further definition of private or intimate parts of a female to include "that portion of the breast which is below the top of the areola”. As enacted, the law contained an exception for a person "entertaining or performing in a play, exhibition, show or entertainment”. In 1984 an additional exception was made for the breastfeeding of infants. Thus, it is now lawful in this State for a woman to bare her breasts and dance provocatively in a bar, but she cannot quietly and discreetly uncover her breasts in other public places, unless she is nursing an infant.
Defendants contend that the differential treatment of men’s and women’s breasts constitutes sex discrimination in violation of equal protection of the laws as guaranteed by the US Constitution 14th Amendment and NY Constitution, article I, §11.
At the outset, I note that this is the first time that section 245.01 has been seriously challenged in New York State on the basis of sex discrimination. (See, People v Gilmore, 120 Misc 2d 741; People v Gilbert, 72 Misc 2d 795, supra.) The Supreme Court has articulated three standards by which to measure statutory classifications under the equal protection clause. One which applies to most of the cases requires the classification to bear a rational relationship to a legitimate government objective. (See, e.g., Williamson v Lee Opt. Co., 348 US 483.) However, a classification based on a "suspect” class, such as race, is constitutional only if it is absolutely necessary to further á compelling government interest. After some hesitation, the court devised an "intermediate” standard for application to gender-based classifications: a statute which treats males and females differently violates the equal protection clause unless the classification is substantially related to the achievement of an important government interest. (Mississippi Univ. For Women v Hogan, 458 US 718, 724; Kirchberg v Feenstra, 450 US 455, 461.)
Under this standard, the People bear the burden of showing both the existence of an important objective and the substan *124 tial relationship between the discrimination in the statute and the accomplishment of that objective. (Wengler v Druggists Mut Ins. Co., 446 US 142; People v Liberta, 64 NY2d 152, 168.) As the People have met their burden in this case, the gender distinction here does not render the statute unconstitutional.
The People argue that the primary function of this statute is to regulate the use of public areas by the community-at-large. Implicit in this contention is the assumption that the public’s sensibilities would be offended by the presence of women with bared breasts in public. Indeed, the title of the article containing this section is "Offenses Against Public Sensibilities”. Thus, the government’s underlying objective is to protect the general public from being accosted by offensive conduct in public places. In this context our Court of Appeals has recently held that prohibiting public nudity is plainly within the State’s police powers. (People v Hollman, 68 NY2d 202.) There is a clear distinction between the manner in which one dresses or wears his hair or modifies his appearance in some other way outside of the norm, and appearing totally unclothed in public. The former has received constitutional protections. (See, e.g., Dwen v Barry, 483 F2d 1126; Richards v Thurston, 424 F2d 1281; Arnold v Carpenter, 459 F2d 939; Massie v Henry, 455 F2d 779; Bishop v Colaw, 450 F2d 1069; Breen v Kahl, 419 F2d 1034.) The latter will not receive such protection in New York. Therefore, the government’s underlying objective asserted here is a legitimate one, and an important one.
The defendants assert that requiring women to cover their breasts reflects a moral view as to appropriate conduct. Relying on People v Onofre (51 NY2d 476) defendants contend that the government’s interest in protecting the public from exposure of the female breasts in public is not legitimate because the State may not legitimately enforce the community’s moral views. However, the defendants have disregarded the public or private distinction which was the determining factor in that case. In Onofre, the People defended a New York penal statute prohibiting consensual sodomy on the ground that the statute served to uphold public morality. In striking down the statute, the Court of Appeals rejected that governmental objective because the statute regulated purely private conduct: "There is a distinction between public and private morality and the private morality of an individual is not synonymous with nor necessarily will have effect on what is known as public moral *125 ity (see State v Saunders, 75 NJ 200, 218-220) * * * In sum, there has been no showing of any threat, either to participants or the public in general, in consequence of the voluntary engagement by adults in private, discreet, sodomous conduct. Absent is the factor of commercialization * * * and absent too intrusion on the sensibilities of members of the public, many of whom would be offended by being exposed to the intimacies of others. ” (People v Onofre, supra, pp 479-490; emphasis added.)
Thus, although the State may not regulate private conduct, it may enforce standards as to public conduct, unless, of course, a fundamental right is involved. Here, there is no fundamental right to appear nude or top-free in public. (People v Hollman, 68 NY2d 202, supra.) Penal Law § 245.01 does not reach private conduct, nor does it attempt to. Today, community standards, as perceived by the Legislature, regard the female breast as an intimate part of the human body. Therefore, the State may legitimately enforce this standard by requiring that the female breast not be exposed in public places.
Defendants also assert that the government interest is illegitimate because it is based on stereotyped and archaic notions of the female breasts as objects for sexual pleasure. In Mississippi Univ. For Women v Hogan (458 US 718, supra) the Supreme Court made clear that the test for determining the validity of a gender-based classification must be applied free of fixed notions concerning the roles and abilities of males and females. The court advised that "[c]are must be taken in ascertaining whether the statutory objective itself reflects archaic and stereotypic notions” (supra, p 725).
I agree with defendants that the State certainly has no governmental interest in preserving or perpetuating the view that the female breast is a sex object. But such is not the objective asserted by the People, or accepted by this court. In Hogan, the State failed to come forward with a legitimate objective to support a statute which prohibited males from attending a State-supported nursing school. In searching for an objective, the court concluded that the statute’s only possible purpose was to assure that nursing remained a female profession. (See, Mississippi Univ. For Women v Hogan, supra, pp 729-730, n 16.) "By assuring that Mississippi allots more openings in its state-supported nursing schools to women than it does to men, MUW’s admissions policy lends credibility to the old view that women, not men, should become nurses, and *126 makes the assumption that nursing is a field for women a self-fulfilling prophesy.” (Supra, pp 729-730.)
Here, the statute’s objective is to protect the public from invasions of its sensibilities, and merely reflects current community standards as to what constitutes nudity. The objective itself is not based on stereotyped notions, therefore, it is not illegitimate.
The People have also advanced the argument that the statute protects women by preventing rape and sexual harassment which the public uncovering of the female breasts might incite. This argument can be dismissed out of hand. The State has no authority to limit one person’s freedom merely because it may induce others to violate the law. (See, Cohen v California, 403 US 15, 23; Terminiello v Chicago, 337 US 1, 4-5; Collin v Smith, 447 F Supp 676, 690, affd 578 F2d 1197, cert denied 439 US 916.) This argument is another example of men attempting to protect women by denying women their freedom. (See, Aiken, Differentiating Sex From "Sex”: The Male Irresistible Impulse, 12 NYU Rev L & Soc Change 357 [1984].)
Once the People have articulated an important governmental interest, they also bear the burden of proving that the statute’s discrimination is substantially related to that objective. (Craig v Boren, 429 US 190; People v Liberta, 64 NY2d 152, supra.) A showing of a substantial relationship requires, among other things, a showing that the gender-based law serves the governmental objective better than would a gender-neutral law. (People v Liberta, supra, p 170; Orr v Orr, 440 US 268.) In the instant case, the offensive conduct from which the public is being protected is nudity, which by community standards includes exposure of the female breasts, but not the male chest. Some of the defendants and their supporters petitioned the Legislature for the right of women to uncover their breasts in secluded places or places specifically set aside for this activity, where those who would be offended could be properly warned. However, here they ask for absolute equality, either to allow women to or prevent men from exposing their chests. But community standards do not deem the exposure of males’ breasts offensive, therefore, the State does not have an interest in preventing exposure of the males’ breasts. A gender-neutral statute which either required both men and women to cover their breasts or eliminated the requirement for both sexes would not best serve the government’s interest in preventing exposure of the female breasts. Thus, the statute’s gender distinction is substantially related to the govern *127 mental objective of protecting the public from invasions of its sensibilities.
Defendants are asking the court for a new definition of nudity which does not encompass the female breast. Yet, nudity is a social concept, a changing social perception. At present, community standards have determined that women’s breasts are an intimate part of the human body, and that their exposure constitutes nudity. Although the public exposure of men’s breasts may be unpalatable to some, society, acting through its Legislature, has decided that such exposure is not so offensive as to require prohibition.
The party seeking to uphold a statute that classifies individuals on the basis of their gender must carry the burden of showing an "exceedingly persuasive justification” for the classification. The burden is met only "by showing at least that the classification serves 'important governmental objectives and that the discriminatory means employed’ are 'substantially related to the achievement of those objectives’ ” (Mississippi Univ. For Women v Hogan, 458 US, at p 724, citing Wengler v Druggists Mut. Ins. Co., 446 US 142, 150, supra). We conclude that the People have met their burden. This gender distinction does not violate equal protection of the laws as guaranteed by the Federal and State Constitutions.
II. VAGUENESS
Defendants argue that the statute is void for vagueness. They point out that although the statute prohibits exposure of any portion of the breasts below the top of the areola, current women’s fashion frequently violates this stricture. There was introduced into evidence the February 10, 1986, issue of Sports Illustrated, the so-called swimsuit issue. The cover shows a woman with most of the breast below the top of the areola exposed, although the areola itself and the nipple are covered. The argument is made that surely the Legislature did not intend to prohibit the wearing of popular fashion, and that therefore a reading of the statute does not give a woman a fair warning as to what conduct is prohibited. Other interesting hypothetical cases are presented. These arguments must be left for another time. Defendants have no standing to challenge this statute on vagueness grounds, for their conduct was clearly proscribed by the statute. "One to whose conduct a statute clearly applies may not successfully challenge it for vagueness.” (Parker v Levy, 417 US 733, 756; see also, People v Harris, 129 Misc 2d 577.)
*128 III. FUNDAMENTAL RIGHT
Defendants argue that the statute deprives them of a fundamental right under the US Constitution 9th Amendment, that is, the right to determine their own physical appearance. Although the 9th Amendment does not, by itself, create any constitutional rights, it recognizes that other rights not set forth explicitly in the Constitution are retained by the People. These have come to be known as "penumbral” rights. While most of those rights have been in the area of privacy, there is nothing in the 9th Amendment which would limit basic rights to that sphere. In his dissenting opinion in Kelley v Johnson (425 US 238) Justice Marshall quotes from the congressional debate on the Bill of Rights regarding which rights should be enumerated in the Constitution: " 'If the committee were governed by that general principle * * * they might have declared that a man should have a right to wear his hat if he pleased * * * but [I] would ask the gentleman whether he thought it necessary to enter these trifles in a declaration of rights, in a government where none of them were intended to be infringed. ’ ” (Kelley v Johnson, supra, pp 251-252.)
The right to wear a hat obviously carries with it the right not to wear a hat. However, the leap of logic from the right not to wear a hat to the right to wear nothing at all covers too great a distance. In 1973 our Court of Appeals articulated the proposition that "[cjertainly, legislation may not control the manner of dress, absent commercial exploitation of exposure, or absent conduct or dress under circumstances creating or likely to create public disorder” (People v Price, 33 NY2d 831, 832). The case is directly in point in that the female defendant was walking along a public street wearing a fishnet pullover through the openings of which the areola portions of her breasts were visible. A Special Term Judge has read that case to mean that "Under New York law, it is not unlawful to be unclothed in a public place” (Commissioner of Dept. of Bldgs. v Sidne Enters., 90 Misc 2d 386, 390). However, Hollman, without any discussion of Price (supra), clearly holds that "prohibiting public nudity is plainly within the State’s police powers” (68 NY2d, at p 207).
During the trial this court heard substantial evidence that society today does not consider the concept of nudity to include unclothed female breasts. There was also testimony that positive results can flow from the acceptance in public of the sight of women’s breasts. This benefit could be an encour *129 agement of the socially and medically desirable practice of breastfeeding, by reducing the feeling of embarrassment many women now have to exposing a breast while nursing, and by promoting a positive concept of a woman’s body. There was testimony from Dr. Melissa Farley, a clinical psychologist, that by baring their breasts in a nonsexual context women can reclaim their breasts from male society and from economic interests. However, she also conceded that the public exposure of women’s breasts is in conflict with the social mores of this country today.
A Federal District Court has found a substantive right to nude bathing at a beach at a national seashore. "Although it matters little where this substantive right is found in the Constitution, I hold that it does exist” (Williams v Hathaway, 400 F Supp 122, 127, affd sub nom. Williams v Kleppe, 539 F2d 803). The Circuit Court of Appeals was somewhat reluctant to affirm this recognition, but was willing to assume it for purposes of its opinion. Even if there is such a right, it will give way to any reasonable regulation. Here, there is no attempt to regulate this form of nudity but to prohibit it, and if there is a constitutionally guaranteed right to this limited exposure then the statute goes too far. However, this court is unwilling to find such a right under the aegis of the right to control one’s personal appearance.
IV. FREEDOM OF EXPRESSION
A. OVERBREADTH
Defendants argue that the statute is unconstitutionally overbroad in violation of the US Constitution 1st Amendment and of the NY Constitution. The Court of Appeals recently addressed an identical challenge in People v Hollman (supra) and found that section 245.01 is not constitutionally over-broad. It is therefore unnecessary for this court to address the contention of these defendants.
B. AS APPLIED TO DEFENDANTS’ CONDUCT
Defendants also argue that the statute is unconstitutional as applied to their conduct in this case, because they were engaged in expressive conduct. In Hollman (supra), the Court of Appeals rejected such an argument. However, the facts in that case are readily distinguishable from those herein. Because I find that defendants were engaged in clearly protected behavior, the statute cannot constitutionally be applied to *130 punish their actions in the circumstances of this case. (See, Brown v Louisiana, 383 US 131; Tinker v Des Moines School Dist., 393 US 503; Spence v Washington, 418 US 405.)
First Amendment rights guaranteeing freedom of speech and assembly and freedom to petition the government for redress of grievances are not confined to verbal expression. (Brown v Louisiana, supra.) It is beyond dispute that expressive conduct, in addition to pure speech, is entitled to the protective shield of the 1st Amendment. To be characterized as expressive, the conduct must be intended to convey a particularized message, and there must be great likelihood that, given the surrounding circumstances, the message would be understood by those who viewed it. (People v Hollman, 68 NY2d 202, supra; Spence v Washington, supra; Clark v Community for Creative Non-Violence, 468 US 288.) The defendant in Hollman asserted that his conduct of sunbathing in the nude at a public beach was protected speech, because he intended to convey his beliefs in the philosophy of nudism. In rejecting this argument the court reasoned: "While there may be contexts in which a public display of nudity would reasonably be understood as a means of communicating an idea, it cannot be said that nude sunbathing on a beach is a form of expression likely to be understood by the viewer as an attempt to convey a particular point of view.” (People v Hollman, supra; emphasis added.)
In contrast to the activity asserted in Hollman (supra) defendants’ activity of removing their shirts in Cobbs Hill Park not only was intended to convey a very particularized message about women’s control over their own bodies, and about the sexism of gender-specific public exposure laws, but there was also a great likelihood that the message would be understood by those who viewed it. Several days before the event defendants issued a press release in which they explicitly stated the meaning of the protest. On the evening prior to the event approximately 60 people attended a meeting at which the issues were discussed. Radio and television interviews to discuss the issues were held before and after the event. At the demonstration itself people carried signs which called attention to the issues, and the defendants and their supporters wore T-shirts displaying the movement’s logo — a top-free Statue of Liberty, and the slogan "Equal rights now— shirtless equality 1986”. Defendants and their supporters engaged in songs and chants and discussed the issues with individuals who had assembled to witness the rally. Defen *131 dants’ conduct was overwhelmingly imbued with communicative elements, and falls within the scope of the 1st Amendment.
I recognize that the State may legitimately regulate or even prohibit conduct which is expressive within the scope of the 1st Amendment. (Clark v Community for Creative Non-Violence, 468 US 288, supra; United States v O’Brien, 391 US 367.) As the court pointed out in O’Brien, such conduct may be regulated or even prohibited if the "regulation * * * is within the constitutional power of the Government; if it furthers an important or substantial governmental interest; if the governmental interest is unrelated to the suppression of free expression; and if the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest” (United States v O’Brien, supra, pp 376-377). Viewed against this standard the statute is not a permissible regulation as applied to the conduct of these defendants on this particular day at this particular place. The court in O’Brien instructs us that "a sufficiently important governmental interest * * * can justify incidental limitations” (United States v O’Brien, supra, p 376). To characterize that interest, the court has used such descriptions as "compelling”, "substantial”, "paramount”, "cogent”. Our inquiry here must examine the importance of the governmental interest sought to be achieved, and the absolute prohibition which the statute imposes, and weigh these against the minimal effect on public sensibilities of the symbolic speech which defendants sought to exercise. Here, defendants’ conduct did not foreclose the use of Cobbs Hill Park by others. Defendants’ demonstration was not a repeated occurrence which was creating a problem in the park; it was a one-time occurrence. Further, defendants carried out the demonstration in a secluded part of the park, so as not to offend or surprise anyone. The demonstration, and what was to occur, was publicized in advance so that the crowd which gathered presumably did so with knowledge of what to expect. Thus, unlike repeated nude sunbathing on a beach, defendants’ conduct did not frustrate the objective of this statute. In the prior discussion it was found that the government’s interest in protecting the public’s sensibilities was sufficiently important to sustain a gender-specific statute under the equal protection clause. However, that interest does not rise to the dignity or cogency required when faced with this 1st Amendment challenge, because nonobscene speech cannot be prohibited merely to protect the sensibilities of the *132 observers. (Spence v Washington, 418 US 405, supra; Street v New York, 394 US 576; Cohen v California, 403 US 15, supra; Erznoznik v Jacksonville, 422 US 205.)
This court emphasizes the wide divergence between the facts in Hollman (supra) and the facts before this court. With that in mind, we find that Penal Law § 245.01 is unconstitutional as applied to defendants’ conduct and that the charges against them should be dismissed.