Ernst H. Bosenberger, J.
The defendants, seven nuns and one laywoman, are charged with a violation of section 240.21 *352 of the Penal Law. It is alleged that they were ‘ ‘ lying in the center aisle of St. Patrick’s Cathedral during a high mass and thereby caused a disturbance of said religious service without permission or authority.” There is no allegation of noise or shouting.
The complaints are sworn to by police officers. The church authorities have made it plain that they do not wish to press these charges. This is acknowledged and conceded by the District Attorney, who points out, however, that the church authorities would not stand in contempt of court but would respond to a proper subpoena. The District Attorney indicates his intention to proceed with the prosecution. It is the defendants’ contention that, based on the “ complainant’s ” having “ withdrawn ” the charge, the complaints should be dismissed.
The catch line for section 240.21 reads ‘1 Disruption, or disturbance of religious service.” The language of the statute denominates the crime described therein as “ aggravated disorderly conduct.” The commentators point out, in the Practice Commentary following the section (McKinney’s Cons. Laws of N. Y., Book 39, p. 158) that “ The name or title of the crime is unaseertainable. ”
The defendants argue that, as applied to them, the statute is unconstitutional, in that they allege it violates the ‘‘ Free Exercise ” clause of the First Amendment to the Constitution of the United States. They also maintain that it violates the ‘ ‘ Establishment ’ ’ clause of that amendment.
We now examine the defendants’ claim that the statute violates the ‘ ‘ Establishment ’ ’ clause of the First Amendment. It is well settled that the First Amendment’s mandates concerning religion are wholly applicable to the States. (Cantwell v. Connecticut, 310 U. S. 296; Abington School Dist. v. Schempp, 374 U. S. 203.)
Prior to the enactment of the revised Penal Law, effective September 1,1967, the Penal Law contained three sections dealing with disturbance of meetings. Section 1321 prohibited disturbance of the Legislature, or either of its houses. Section 1470 prohibited disturbance of any meeting not unlawful in character. Section 2071 prohibited disturbance of ‘ ‘ people met for religious worship.” Violation of any of these sections was a misdemeanor.
The entire Penal Law was revoked and superseded by the revised Penal Law. Subdivision 4 of section 240.20 prohibits disturbance of “ any lawful assembly or meeting of persons.” The prohibited conduct constitutes a violation. Professor Den *353 zer, the Executive Director of the Commission on Revision of the Penal Law and Criminal Code, and Judge McQuillan, its counsel, state in their commentary (McKinney’s Cons. Laws of N. Y., Book 39, p. 127) that subdivision 4 of section 240.20 “ embraces three individually defined offenses of the former Penal Law dealing with the disturbance of unlawful (sic) meetings (§§ 1321, 1470, 2071) ”. All disturbances of meetings had, under the old law, been misdemeanors; under the revised Penal Law, all were to be violations. Section 240.21 is one of only three in the entire revised Penal Law, as enacted, that were neither drafted nor sponsored by the commission.
The revisers of the Penal Law intended to treat disturbances of all meetiiigs equally. They did not intend to grant special preferences to religious meetings over all others. This, however, the Legislature did.
In disapproving the proposed statute (§ 240.21), the Committee on Criminal Courts, Law and Procedure of the Association of the Bar of the City of New York, points out that it makes “ the disturbance of a religious service a vastly more serious offense than the disturbance of lawful assemblies for a variety of other solemn and important purposes.” (1967 Legis. Bull, No. 38).
The matter may be brought into focus by considering the fact that disturbance of a funeral conducted in an undertaking establishment in a secular manner is a violation. Disturbance of a similar funeral, different only in that a clergyman officiates, is punished by a sentence more than 24 times as harsh.
It might well be argued, from the foregoing, that this statute is one in aid of religion. It has been held time and again by the Supreme Court that neither Congress nor the States may make any laws which aid one religion, aid all religions, prefer one religion over another, or even prefer religion over non-religion. (Everson v. Board of Educ., 330 U. S. 1; Abington School Dist. v. Schempp, 374 U. S. 203.)
The defendants cite the Practice Commentary, by Denzer & McQuillan (McKinney’s Cons. Laws of N. Y., Book 39, p. 158, supra), which states “ This section by its terms permits conviction for this relatively serious offense of a person standing more than thirty yards away from a church who, without even being aware that services are in progress, causes an unrelated street disturbance which incidentally happens to annoy some of the parishioners.” A clear and well-researched argument is made that the statute is overbroad and thereby void. (Coates *354 v. City of Cincinnati, 402 U. S. 611; N. A. A. C. P. v. Button, 371 U. S. 415.)
The court is constrained, however, by the long-standing principle that a statute is not to be declared to be unconstitutional where the decision in the matter may be rested on an alternative ground.
jSeven of the eight defendants are members of Roman Catholic holy orders, six Sisters of Charity and one TJrsuline Sister. The eighth defendant is a Roman Catholic lay teacher.* They maintain, in an affidavit submitted on their motion to dismiss the complaint, that under church law, what they did was proper and within established Catholic tradition and ritual. They cite the Constitution on the Sacred Liturgy which states: “ The people should be encouraged to take part by means of acclamation, responses, psalmody, antiphons and songs, as well as by actions, gestures and bodily attitudes.”
Indeed, Mr. Justice Douglas observed, in his concurring opinion in Brandenburg v. Ohio (395 U. S. 444, 455): “ The act of praying often involves body posture and movement as well as utterances. It is nonetheless protected by the Free Exercise Clause.”
It is conceded by the defendants that there are many within the church who are not in accord with the modernization of church laws initiated by Vatican II. It is argued that this is an internal matter to be decided within the church itself. It may well be that the church authorities hold to the same view, having stated that they do not wish the prosecution against these defendants to proceed.
In Presbyterian Church v. Hull Church (393 U. S. 440) dealing with a dispute between factions within a religious body, Mr. Justice Brennan quoted the opinion in Kedroff v. St. Nicholas Cathedral (344 U. S. 94, 116): “The opinion [in Watson v. Jones] radiates * * * a spirit of freedom for religious organizations, an independence from secular control or manipulation'— in short, power to decide for themselves, free from state interference, matters of church government as well as those of faith and doctrine.”
Further on in the Presbyterian Church opinion it is stated (p. 449):
“ If civil courts undertake to resolve such controversies in order to adjudicate the property dispute, the hazards are ever *355 present of inhibiting the free development of religions doctrine and of implicating secular interests in matters of purely ecclesiatical concern.”
And, finally, in the same opinion the court rules (p. 451):
“ To reach those questions would require the civil courts to engage in the forbidden process of interpreting and weighing church doctrine.”
This court will not engage in that forbidden process.
The complaints are dismissed.

 All allegations of fact contained herein are drawn either from the complaints or from affidavits submitted on the motion. There has been no evidentiary hearing, the defendants having made their motion, based on written motion papers, at their arraignment.