OPINION OF THE COURT
Stephen G. Crane, J.
A conflict, more apparent than real, between two public policies prompts this opinion. Both of these policies are codified in the Penal Law and Criminal Procedure Law. One — the dismissal of a criminal action in furtherance of justice — is inherently judicial. The other of more recent vintage — the enforcement of stern measures against gun offenders — is an expression of the popular will through the Legislature. A tension between the values underpinning these policies is created by motions, made with increasing frequency of late, to dismiss felony gun prosecutions in furtherance of justice (People v Clayton, 41 AD2d 204; CPL 210.40 [the “Clayton motion”]). The case at hand presents a good example of this tension.
THE MOTION
Defendant as part of his omnibus motion seeks dismissal of the felony indictment in furtherance of justice pursuant to CPL *580 210.40, conditioned upon his agreement to plead guilty to a misdemeanor weapons charge and acceptance of any lawful sentence to be imposed. He is charged with criminal possession of a weapon in the third degree (Penal Law § 265.02) arising from unusual circumstances. On May 31, 1984, defendant was struck by a speeding, out-of-control taxicab as he was walking on the sidewalk along Park Avenue South near East 22nd Street in New York County. He was removed to Cabrini Hospital in a state of unconsciousness; the emergency room personnel inadvertently discovered a loaded .32 caliber revolver in his possession.
Defendant, 46 years old, is unmarried and has a 26-year-old daughter. He completed his education in the eighth grade. He enjoys a reasonably stable employment history. His criminal record indicates a 1975 conviction for robbery, third degree, for which he was sentenced, incarcerated about IV2 years and discharged from parole supervision in 1979. Defendant stresses his law-abiding, productive life over the past nine years. He argues that the mandated predicate felony sentence would be unduly harsh considering his substantial injuries in the accident, the absence of harm to anyone else and his own history, character, and stable life. He confesses he was foolish to possess a gun. He did so to protect himself since he had previously been robbed and his home had been burglarized.
public policy: the power to dismiss
IN FURTHERANCE OF JUSTICE
Ancient notions of fundamental justice have survived from the common law in the form of the power to terminate or nullify a prosecution. At common law the power to effect a nolle prosequi belonged to the prosecutor. By statute the court was given the right to veto but not to compel entry of the nolle prosequi. Thus, in earlier times this became a device in which the court had a voice but only upon motion of the prosecutor (People v McLeod, 25 Wend 483, 572-573 [Supreme Ct 1841]).
This power to terminate a prosecution now resides with the court alone and rests upon the notion that justice is larger than law. The concept has been equated with the power of equity in civil matters (People v Rickert, 58 NY2d 122, 126). The judicial power to dismiss in furtherance of justice allows “the letter of the law gracefully and charitably to succumb to the spirit of justice” (People v Davis, 55 Misc 2d 656, 659). The power is there to be used in any case — even a gun case — despite the “legal or factual merits of the charge [or] the guilt or innocence of the defendant.” (People v Quill, 11 Misc 2d 512, 513.)
*581 One reason for the vitality of this power, aside from its ancient origins grounded in principle, is the restraint of the courts in invoking it. Only in the rarest and most unusual cases have the circumstances cried out for the application of this remedy (cf. People v Belge, 41 NY2d 60, 62-63 [Fuchsberg, J., concurring]). A subjective feeling by the court is not enough; there must be a delicate balancing of competing interests. Recognizing the need for more effective appellate review of the exercise of or refusal to apply this remedy (People u Beige, supra, at p 62), the Legislature in 1979 enacted a more detailed codification of the device in CPL 210.40 and 170.40. (People v Rickert, supra, at p 127; L 1979, ch 216.) This was no effort to curtail the power of the court but to enhance it by supplying objective criteria for its exercise.
Before analyzing the application of this power to the gun case at bar, we must study the strength and character of the public policy underpinning the gun control laws.
public policy: gun control
In 1980 the Legislature revamped gun control in the State of New York (L 1980, ohs 233, 234).[1] Mere possession of a loaded firearm outside the defendant’s home or place of business (Penal Law § 265.02 [4]) or of a firearm anywhere by a defendant previously convicted of any crime (Penal Law § 265.02 [1]) remained class D felonies, the former being a violent felony (Penal Law § 70.02 [1] [c]). If the possession of a loaded or unloaded firearm is by a defendant convicted within the prior five years of a class A misdemeanor or a felony (Penal Law § 265.02 [5] [ii], as amended by L 1981, ch 175), the offense is a class'D violent felony (Penal Law § 70.02 [1] [c]).
For these violent gun possession felonies or their attempt, the legislation mandated a sentence of at least one year (Penal Law § 70.02 [2] [c]), unless, of course, the defendant be a second felony offender (Penal Law § 60.05 [6]). To protect this scheme of mandatory sentencing, the gun law limited postindictment plea bargaining (CPL 220.10 [5] [d] [iii], [iv]; 220.30 [3] [b] [v]). A safety valve was built into this structure for undue harshness of sentence for an offender without a class A misdemeanor in the preceding five years (Penal Law § 70.02 [2] [c] [i]). A smaller pressure valve was designed for the defendant convicted of a class A misdemeanor in the prior five years. For this offender, the court may determine, with or without a hearing, whether specified factors are present.[2] (Penal Law § 70.02 [5] [b], [c].) If *582 so, it need not impose the one-year sentence. There is no other escape from the mandatory sentence structure of the gun law and none at all for the second felony offender. Indeed, while the gun legislation expressly embraced the prior felon in the definition of the offense under Penal Law § 265.02 (5) (ii), it carefully limited the court’s ability to circumvent the minimum jail sentence to the class A misdemeanant of the prior five years or the lesser or first offender (Penal Law § 70.02 [2] [c] [i]; § 70.02 [5] [b]).
This elaborate structure represented an emphatic expression of public policy. The memorandum in support of the gun law noted that 68% of gun possession arrestees in New York County have a prior record. Thus, the bill was intended to “establish a tough minimum sentence for the great majority of cases in that county * * * This bill limits the discretion available to [prosecutors and courts] where the legislature feels strongly that no mitigating circumstance should permit erosion of the mandatory-minimum sentence.” (Memorandum in Support of Assembly Intro 11309, at 3 [1980] in Bill Jacket for L 1980, ch 233.) Then Governor Hugh L. Carey, in approving the legislation, stated: “We must bring an end to the proliferation of illegal handguns in New York * * * We must let it be known that New York has the toughest gun law in the country and that it will be strictly enforced.” (1980 McKinney’s Session Laws of New York, at 1858.)
Attention may now focus on the way this strong policy of gun control influences the application in the case at bar of the court’s power to dismiss in furtherance of justice.
TENSION AND SYNTHESIS
On its merits, defendant’s motion presents but a single factor of significance: The circumstance leading to the discovery of his possession of the pistol. This circumstance, involving a bizarre automobile mishap causing defendant physical injury, is emotion-packed and sympathy-inducing. Yet, this factor does not really fit within any of the 10 categories under CPL 210.40 that the court must consider in determining a motion to dismiss in furtherance of justice. [3] Indeed, the factors enumerated in the *583 statute point to a denial of the motion on the merits. The essence of the crime with which defendant is charged is mere possession. The-motive of the defendant for carrying the weapon is no defense, and his retrospective regret may be influential at •sentencing if he be convicted, but it does not compel dismissal in furtherance of justice. Thus, the evidence of guilt is all but conclusive (CPL 210.40 [1] [c]). Moreover, the simple possession of a loaded firearm by a person previously convicted of a crime was the evil the Legislature and Governor took precise aim at when the 1980 gun law was adopted. To repeat, passive possession is the offense. (Cf. People v Jordan, docket No. ONO40372, Crim Ct, NY County, 1981, Fried, J.) The harm caused by the offense is grave because defendant’s possession of a handgun contributes to the epidemic of illegal possession of such weapons [4] about which the public is “up in arms.” (CPL 210.40 [1] [b].) A dismissal in this case would impact unfavorably on this public policy and would tend to defeat the safety and welfare of the community (CPL 210.40 [1] [h]; see, People v Viszokai, 99 AD2d 519; People v Andrew, 78 AD2d 683).
In fact, the public that so vigorously and overwhelmingly supported this legislation (see, Bill Jacket, supra, L 1980, ch 233) ought to lose confidence in the criminal justice system if cases like this are dismissed in furtherance of justice simply because the sentencing penalties are stringent (CPL 210.40 [1] [g]). The balance is not redressed in defendant’s favor by his *584 rehabilitation since his 1975 felony conviction, his employment history and his trouble-free existence thereafter (CPL 210.40 [1] [d]).
The genuine basis of the motion under consideration at bar is revealed by defendant’s offer to plead guilty to a misdemeanor gun charge. This is nothing more than an effort to circumvent the plea and sentence restrictions the statute has imposed for the defendant and the crime with which he is charged.[5] This effort is propelled by the facts surrounding the accident and the recovery of the gun. If the court were to respond to defendant’s effort on this basis, it would be rewriting the gun control legislation.
The order denying this motion was entered on October 10, 1984.

. This was the legislative year next ensuing the codification of the Clayton factors in CPL 210.40 and 170.40.

. “[MJitigating circumstances that bear directly upon the manner in *582 which the crime was committed; or (ii) where the defendant was not the sole participant in the crime, the defendant’s participation was relatively minor although not so minor as to constitute a defense to the prosecution; or (iii) possible deficiencies in proof of the defendant’s commission [of the offense].” (Penal Law § 70.02 [5] [b].)

. CPL 210.40 (1) directs the court to consider, in its quest for “some compelling factor, consideration or circumstance clearly demonstrating that conviction or prosecution of the defendant upon such indictment or count would constitute or result in injustice * * *
*583 “(a) the seriousness and circumstances of the offense;
“(b) the extent of harm caused by the offense;
“(c) the evidence of guilt, whether admissible or inadmissible at trial;
“(d) the history, character and condition of the defendant;
“(e) any exceptionally serious misconduct of law enforcement personnel in the investigation, arrest and prosecution of the defendant;
“(f) the purpose and effect of imposing upon the defendant a sentence authorized for the offense;
“(g) the impact of a dismissal upon the confidence of the public in the criminal justice system;
“(h) the impact of a dismissal on the safety or welfare of the community;
“(i) where the court deems it appropriate, the attitude of the complainant or victim with respect to the motion;
“(j) any other relevant fact indicating that a judgment of conviction would serve no useful purpose.”

. Of total arrests of 97,236 for the year 1982 in the City of New York, 12,252 included gun charges as the top or secondary charge. New York County accounted for 3,615 of these arrests. The gun charge as the top charge was found in over one third of these 12,252 arrests.
Indictments in gun cases in New York City that year amounted to 9,592 cases of a total of 28,228 indictments that year in this city.
Dispositions of gun cases (where the gun possession or use was the top or a lesser charge in the indictment) numbered 7,460 for 1982 in New York City. (Figures obtained from Division of Criminal Justice Services, Office of Criminal Justice Statistical Services and Office of Court Administration, Office of Programs and Planning, Caseload Activity Reporting System.)

. As we have already seen (pp 581-582, supra), the Legislature has laid out strict provisions for mitigation of penalty. None applies to a second felony offender. For these recidivists the Legislature intended no mitigation of sentence.