OPINION OF THE COURT
Barbara F. Newman, J.
The defendants are charged with disruption, or disturbance of a religious service (Penal Law § 240.21). Defendant Morrisey is also charged with attempted assault in the third degree (Penal Law §§ 110.00, 120.00 [1]) and harassment in the second degree (Penal Law § 240.26 [1]). On November 30, 1993, the court issued an abbreviated decision denying the defendants’ motion to dismiss pursuant to CPL articles 170 and 210, granting the defendants’ requests for discovery, granting the People’s cross motion for reciprocal discovery and referring the issue of the defendants’ prior convictions or prior bad acts to the Trial Court. This decision will constitute the full decision concerning the defendants’ motion to dismiss pursuant to CPL articles 170 and 210.
Penal Law § 240.21 states:
"Disruption, or disturbance of religious service.
"A person is guilty of aggravated disorderly conduct, who makes unreasonable noise or disturbance while at a lawfully assembled religious service or within one hundred feet thereof, with intent to cause annoyance or alarm or recklessly creating a risk thereof.”
The accusatory instrument provides, in relevant part:
"Deponent states that, at approximately 1715 hours, inside the above location, when a regularly scheduled service was to have begun, the defendants and other unapprehended individuals, scattered throughout the congregation, including in the altar area, loudly chanted, and in doing so, prevented the *298 scheduled service from beginning. Deponent observed the two defendants, along with approximately eight other unapprehended individuals, performing these actions on the sanctuary platform around the altar and behind the cross, alternately walking and kneeling as they chanted. Deponent states that defendants’ actions caused the service to be delayed approximately one-half hour.
"Deponent states that, at approximately 1740 hours, as he and deacon Felipe Sin approached the altar, defendants blocked deponent and Mr. Sin from proceeding to the altar by standing at the altar, in the way. Defendants continued to chant, with defendant Morrisey leading and defendant McDaniel and other unapprehended individuals responding.
"Deponent states that, as he stood to conduct the opening rite of the service, defendant Morrisey stood in front of deponent, the defendant facing the congregation and with his back to deponent.
"Deponent states that, after the choir and congregation sang a hymn, he observed an unapprehended person seize the microphone in front of the choir.
"Deponent states that, as deponent observed Cathy Brown read the first reading, deponent observed two unapprehended individuals stand approximately one foot from Ms. Brown, on either side of her, shouting at her.
"Deponent states that, at the same time, defendant McDaniel approached informant and from approximately three feet away, shouted, in substance: 'You shouldn’t be here. You are not fit to be a priest. You should be ashamed of yourself. You’re not fit or worthy to sell shoes.’
"Deponent then observed defendant Morrisey attempt to seize a microphone from the lectern.
"Deponent states that, as he stood, prior to the reading of the Gospel, defendant Morrisey approached deponent and, from behind, pulled deponent with defendant Morrisey’s arm around deponent’s neck. Deponent further observed defendant Morrisey reach with defendant’s other hand and seize the small, clip-on microphone which deponent held for the Gospel reader. Deponent states that, as the defendant pulled the microphone away, a wire on the microphone lodged in deponent’s finger and then hooked into his hand, causing physical injury in the form of lacerations which required cleaning and tetanus shots at St. Luke’s Roosevelt Hospital, and which caused deponent pain.
*299 "Deponent states that defendants’ actions constituted unreasonable noise of a sort that prevented the worshippers at the scheduled service from conducting the service and which caused deponent annoyance and alarm.”
The defendants have moved for the dismissal of the accusatory instrument on several grounds. The court will address each argument individually.
CONSTITUTIONALITY OF PENAL LAW § 240.21
The defendants argue that the charge of disruption, or disturbance of religious service is unconstitutional on the grounds that it violates the Due Process, Free Exercise of Religion and Establishment Clauses of the United States Constitution.
At the outset, the court notes that it is an elementary rule of judicial review of the constitutionality of any statute that: "[i]f there is any doubt as to the constitutionality of a statute the Legislature’s expressed will should be upheld; and mere doubt does not afford a sufficient ground for a judicial declaration of invalidity. As otherwise expressed, if there is a reasonable doubt as to its validity an act must be upheld, and it will be stricken down only when unconstitutionality is shown beyond a reasonable doubt.” (McKinney’s Cons Laws of NY, Book 1, Statutes § 150, at 311.) Thus, the defendant has a heavy burden to meet in order to overcome this presumption of constitutionality. (Matter of Quinton A., 49 NY2d 328 [1980]; People v Pagnotta, 25 NY2d 333, 337 [1969].)
In support of their argument, the defendants rely on the arguments advanced in People v Steele (70 Misc 2d 351 [Crim Ct, NY County 1972]). In People v Steele, the court dismissed the complaints against eight defendants who were charged with Penal Law § 240.21 when they allegedly lay in the center aisle of St. Patrick’s Cathedral during a Mass. The defendants, whose group consisted of seven nuns and one Catholic lay teacher, argued that their actions were allowed under church doctrine, as stated in the Constitution on the Sacred Liturgy, which encourages worshippers " 'to take part by means of acclamation, responses, psalmody, antiphons and songs, as well as by actions, gestures and bodily attitudes.’ ” (Supra, at 354.) In reaching its decision the Steele court relied on Presbyterian Church v Hull Church (393 US 440 [1969]), and declined to engage in the process of interpreting and weighing church doctrine. (People v Steele, at 354-355.) Accordingly, the *300 complaints were dismissed against all of the defendants on these alternate grounds.
The court in Steele (supra) declined to declare Penal Law § 240.21 unconstitutional and the court did not reach any of the constitutional arguments presented by the defendants in that case. However, the defendants in the instant matter renew these constitutional arguments before this court.
The defendants contend that Penal Law § 240.21 violates the Establishment Clause by designating this statute as a class A misdemeanor while the disruption of a nonreligious assembly is designated in the Penal Law as a violation. (See, Penal Law § 240.20.) The People argue that the purpose of Penal Law § 240.21 is not to establish any right; its purpose is to protect the rights of those individuals who choose to exercise their fundamental right of freedom of religion.
The court agrees with the People. As the People have correctly noted, the Legislature may designate an offense a class A misdemeanor when the proscribed conduct interferes with a fundamental right. (See, e.g., Penal Law § 240.30 [3]; Civil Rights Law § 40-c [2]; § 40-d.)
In support of their argument, the People cite to Riley v District of Columbia (283 A2d 819 [DC Ct App 1971]). The defendants in Riley also argued that a statute, similar to Penal Law § 240.21, violated the Establishment Clause. The court in Riley upheld the constitutionality of District of Columbia Code Annotated § 22-1114, which states:
"Disturbing religious congregation:
"It shall not be lawful for any person or persons to molest or disturb any congregation engaged in any religious exercise or proceedings in any church or place of worship in the District of Columbia; and it shall be lawful for any of the authorities of said churches to arrest or cause to be arrested any person or persons so offending, and take him, her, or them to the nearest police station, to be there held for trial; and any person or persons violating the provisions of this section shall forfeit and pay a fine of not more than $100 for every such offense.”
The court in Riley (supra) rejected the defendants’ argument that the statute violated the Establishment Clause and conversely found that the statute expressed "a legitimate governmental interest in protecting freedom of worship as well as the maintenance of peace and good order.” (Supra, at 825.)
This court concurs with the People’s argument and is per *301 suaded by the rationale of the court’s finding in Riley v District of Columbia (283 A2d 819, 825 [DC Ct App 1971], supra).
The defendants further argue that as applied Penal Law § 240.21 is an unconstitutional infringement of their First Amendment right to freedom of religion. The defendants argue that they were in the process of reciting the rosary at the time of their arrest. Therefore, the defendants argue, this court must find that the recitation of the rosary is prima facie an "unreasonable noise or disturbance” proscribed by Penal Law § 240.21 in order to find that the statute is constitutional.
In response to this argument, the People contend that the statute does not impose criminal liability on an individual for his or her religious beliefs and that to do so would in fact be prohibited by the Free Exercise of Religion Clause. Rather, the People state that the statute "is directed at preventing acts which intentionally or recklessly inhibit or interfere with the progress of a religious service.” (People v King, 148 Misc 2d 859, 861 [Crim Ct, NY County 1990].)
The court finds the defendants’ argument to be without merit. The Supreme Court has explicitly held that an individual may not exercise his or her own constitutional rights and in this process infringe on the constitutional rights of others. Further, the Court has held that an individual may not exercise claimed First Amendment rights at any place or at any time. (Adderley v Florida, 385 US 39 [1966], reh denied 385 US 1020 [1967]; Cox v Louisiana, 379 US 536 [1965].)
The First Amendment does not guarantee an absolute right to express in "any place, at any time, and in any way.” (Olivieri v Ward, 801 F2d 602, 605 [2d Cir 1986], citing Heffron v International Socy. for Krishna Consciousness, 452 US 640, 647 [1981]; Adderley v Florida, 385 US 39, 47-48 [1966], supra; People v Hollman, 68 NY2d 202 [1986]; People v Bakolas, 59 NY2d 51 [1983].) In People v Hollman (supra), the New York Court of Appeals framed the State’s ability to regulate expression as follows: "[C]onduct may be regulated, or even prohibited, 'if [the regulation] is within the constitutional power of the Government; if it furthers an important or substantial governmental interest; if the governmental interest is unrelated to the suppression of free expression; and if the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest’ ” (citations omitted). (68 NY2d, at 207.)
*302 The defendants are charged with engaging in conduct which interfered with the religious service being conducted at St. Paul the Apostle Church. It is acknowledged by the defendants that their actions were intended as "an attempt to prevent the sacrilege of a Mass”. Clearly, the defendants’ conduct, if as alleged, infringed on the rights of those persons in attendance who were exercising their freedom of religion and who were participating in a Mass. The court finds that conduct proscribed by the challenged statute is not intended to punish the exercise of religion but it is rather intended to protect the rights of persons to exercise their own religious beliefs without impermissible interference.
Additionally, in response to the defendants’ argument, the court notes that the factual allegations in the accusatory instrument describe conduct by the defendants significantly beyond the mere recitation of the rosary. The complaint alleges considerable disruptive conduct by the defendants, including that the defendants blocked the way of the priest and the deacon at the beginning of the service, keeping them from proceeding to the altar; defendant McDaniel shouted several things that did not constitute a prayer of any type at the priest; defendant Morrisey attempted to seize a microphone from the lectern; defendant Morrisey, with his arm around the neck of the priest, pulled at the priest as defendant Morrisey attempted to grab the microphone from the priest. Clearly, the conduct which is alleged to have been committed by the defendants exceeded the recitation of the rosary. "Prohibiting a 'disturbance’ is directed at preventing acts which intentionally or recklessly inhibit or interfere with the progress of a religious service.” (People v King, supra, at 861, citing People v Malone, 156 App Div 10 [2d Dept 1913]; State v McNair, 178 Neb 763 [1965].) Penal Law § 240.21 prohibits conduct intended to cause annoyance or alarm at a religious service. As noted supra, the conduct alleged herein goes far beyond the recitation of a prayer.
After consideration of the applicable principles of law and pertinent case law, this court finds that Penal Law § 240.21 does not violate the defendants’ freedom of religion.
The defendants also argue that Penal Law § 240.21 is facially overbroad and cite to People v Steele (70 Misc 2d 351, supra), in support of this argument. However, People v Steele (supra) did not rule on the issue of the overbreadth of Penal Law § 240.21. The decision in Steele simply suggests that an argument can be made that the statute is overbroad and *303 thereby void. In support of this position the Steele decision cites to the Practice Commentary by Denzer and McQuillan (McKinney’s Cons Laws of NY, Book 39, Penal Law § 240.21, at 158 [1967]). The Honorable Richard Denzer, counsel to the Temporary Commission on Revision of the Penal Law and Criminal Code, wrote to the Honorable Robert R. Douglas concerning the proposed Penal Law § 240.21 in a letter dated April 11, 1967, contained in the Bill Jacket to Penal Law § 240.21 (L 1967, ch 614). The letter states, "[t]he proposed section * * * provides that a person is guilty of 'aggravated disorderly conduct’ if he 'makes [sic] . . . disturbance’ while within 100 feet of a 'lawfully assembled religious service.’ There is no requirement that the offender’s conduct in fact disturb the service, or that his conduct be coupled with an intent to disturb the service, or that it recklessly create a risk thereof.” The drafters of the Penal Law clearly were mindful of these comments in the wording of the statute. As noted in People v King, "the crime of disruption or disturbance of a religious service and the offense of disorderly conduct by disturbing a lawful assembly, provide that a person is guilty when, acting with the necessary intent he or she makes unreasonable noise or disturbance.” (Supra, at 861.) Therefore, it is clear that the statute is not meant to proscribe the conduct of an individual who is standing fewer than 100 feet from a religious service and whose conduct is not coupled with the requisite intent to disturb the service or recklessly creating a risk thereof. As stated previously, the State has a justifiable interest in protecting the rights of those who wish to exercise their freedom of religion over the interest of those individuals who intend to infringe these First Amendment rights. (People v Hollman, supra.)
The right to freedom of speech is not absolute. (Chaplinsky v New Hampshire, 315 US 568 [1942].) Certain forms of speech may be regulated if the regulating statute is formulated properly. As stated in Chaplinsky (supra, at 571-572): "There are certain well-defined and narrowly limited classes of speech, the prevention and punishment of which have never been thought to raise any Constitutional problem. These include the lewd and obscene, the profane, the libelous, and the insulting or 'fighting’ words — those which by their very utterance inflict injury or tend to incite an immediate breach of the peace. It has been well observed that such utterances are no essential part of any exposition of ideas, and are of such slight social value as a step to truth that any benefit that *304 may be derived from them is clearly outweighed by the social interest in order and morality.” A statute may be held unconstitutional if it is overbroad. (Broadrick v Oklahoma, 413 US 601 [1973].) The Supreme Court defined the concept of over-breadth in Grayned v City of Rockford (408 US 104 [1972]). "A clear and precise enactment may nevertheless be 'overbroad’ if in its reach it prohibits constitutionally protected conduct * * * The crucial question * * * is whether the ordinance sweeps within its prohibitions what may not be punished [constitutionally].” (Supra, at 114-115.)
The People argue that the defendants lack standing to raise an overbreadth claim because their conduct allegedly occurred inside the church and "falls squarely within the 'hard core’ of the statute’s proscriptions.” (Broadrick v Oklahoma, 413 US 601, 608 [1973], supra.)
The court finds that the defendants do have standing to challenge the statute. In Gooding v Wilson (405 US 518 [1972]) the Supreme Court held a person has standing to make an overbreadth challenge "even though it might be constitutionally permissible to regulate that person’s conduct under a more narrowly drawn and specified statute.” (Holton v State, 602 P2d 1228, 1233, citing Gooding v Wilson, supra, at 520-521.) One commentator states: "[The] result [of a successful overbreadth challenge] may be understood as an exception to the rule that individuals are not ordinarily permitted to litigate the rights of third parties, since an individual whose conduct may not itself be protected by the First Amendment is awarded a judicial victory on the claim of a law’s potential unconstitutional applications to the conduct of persons not before the court.” (Tribe, American Constitutional Law 711-712 [1978] [footnotes omitted].)
Under the overbreadth doctrine, a person may be permitted to litigate the rights of third parties, even though that individual’s alleged actions do not necessarily fall under the scope of these arguments. Accordingly, the defendants do have standing to raise an overbreadth argument in relation to Penal Law § 240.21.
The court is unaware of any reported decisions in this State which analyze Penal Law § 240.21 in relation to an over-breadth challenge; courts in other States have analyzed comparable statutes proscribing the disturbance of a lawful meeting. (See, Riley v District of Columbia, 283 A2d 819, supra.) The Supreme Court of California upheld the constitutionality *305 of a statute proscribing the willful disturbance of a lawful meeting. (In re Kay, 1 Cal 3d 930, 464 P2d 142 [Sup Ct 1970].) In so holding the court stated: "The Constitution does not require that any person, however lofty his motives, be permitted to obstruct the * * * continuation of a meeting without regard to the implicit customs and usage or explicit rules governing its conduct * * * The constitutional guarantees of the free exercise of religious opinion, and of the rights of the People peaceably to assemble and petition for a redress of grievances, would be worth little if outsiders could disrupt and prevent such a meeting in disregard of the customs and rules applicable to it.” (In re Kay, 1 Cal 3d, at 938, 464 P2d, at 147 [citations omitted].)
The facts in Kay (supra) are distinguishable from the defendants’ alleged actions herein. The petitioners in Kay began clapping and shouting during the latter portion of a speech being delivered by a Congressman. The petitioners had been advised by the police that they would be allowed to protest the speech on the condition that it was done in a nonviolent manner. During the speech, the Congressman also assured the petitioners that they possessed the constitutional right to protest. Another important distinguishing fact in Kay is that it was not alleged that the petitioners’ protests affected the program and the Congressman completed his speech. In contrast, the defendants herein did not have the implicit or explicit authority or permission from the complainants or the church officials to enter into a protest in any manner whatsoever. Furthermore, herein the defendants’ conduct allegedly "prevented the scheduled service from beginning”, "caused the service to be delayed approximately one-half hour”, and "prevented the worshippers at the scheduled service from conducting the service” (Crim Ct misdemeanor information). The defendants allegedly chanted during the service and physically approached the priest and others participating in the Mass. Although it may be argued that protest was the motive behind the defendants’ alleged actions, the manner of their actions make a prima facie case that the defendants intended to prevent those with whom they disagreed from conducting a religious service.
Similarly, in Riley v District of Columbia (supra), the court upheld the constitutionality of a comparable statute. The court stated "to justify the imposition of criminal sanctions for disturbing a religious meeting a person must have intentionally committed an act or acts which are found to have sub *306 stantially disrupted the service. A conviction cannot be had for conduct which is orderly and within the known customs and usages governing the religious exercise[s] or proceedings in the church.” (Supra, at 823 [emphasis supplied].)
This court must decide whether the language of the challenged statute, given its normal meaning, is so broad that its sanctions might apply to conduct that is constitutionally protected. This court finds that Penal Law § 240.21 is not overly broad. While the statute prohibits conduct committed at a religious service or within 100 feet of a religious service, the statute proscribes these actions only when they are coupled with the requisite culpable intent necessary under the statute. (See, People v King, 148 Misc 2d 859, supra.)
The defendants urge this court to follow the holding of People v Steele (70 Misc 2d 351, supra), and dismiss the accusatory instrument on an alternative ground. The defendants argue that the resolution of these issues presented in this criminal action would require this court to "engage in the forbidden process of interpreting and weighing church doctrine.” (Presbyterian Church v Hull Church, 393 US 440, 451 [1969], supra.)
The defendants argue that the Mass at St. Paul the Apostle Church was to be celebrated in honor of lesbian and gay pride. The defendants further argue that a Mass is "a sacrifice of God to God on behalf of mankind.” In conclusion, the defendants state that a Mass celebrated for these reasons would be in the name of sin and evil, therefore making the Mass a sacrilege. The defendants further argue that all Catholics are under an obligation to prevent such a sacrilege from occurring within the church. This court declines to engage in the process of interpreting and weighing church doctrine and therefore declines to decide whether church doctrine condones or permits the defendants’ conduct.
The court having denied the defense motions to dismiss a trier of fact must determine if the defendants’ actions constituted conduct proscribed by Penal Law § 240.21.
MOTION TO DISMISS IN INTEREST OF JUSTICE
A motion to dismiss in the interest of justice enables the court as a matter of discretion to dismiss a criminal action in the furtherance of justice and fairness. (People v Clayton, 41 AD2d 204 [2d Dept 1973].)
The purpose of a motion to dismiss in the interest of justice *307 is to allow justice to prevail over the strict letter of the law so as to prevent a miscarriage of justice. (People v Andrew, 78 AD2d 683 [2d Dept 1980]; People v Stern, 83 Misc 2d 935 [Crim Ct, NY County 1975].) The motion should not be granted unless the facts and circumstances are such that to deny relief would shock the conscience of the court. (See, People v Rickert, 58 NY2d 122 [1983].) In entertaining such a motion, the court must scrutinize the merits of the defendant’s application and weigh the respective interests of the defendant, the complainant and the community-at-large. (People v Belkota, 50 AD2d 118 [4th Dept 1975]; People v Clayton, 41 AD2d 204 [2d Dept 1973], supra; People v Garcia, 126 Misc 2d 579 [Sup Ct, NY County 1984].)
In deciding a motion to dismiss in the interest of justice, the court must to the extent applicable examine and consider individually and collectively the following factors:
(1) seriousness of the offense;
(2) harm caused by the offense;
(3) evidence of guilt, whether admissible at trial or not;
(4) history and character of the defendant;
(5) any exceptionally serious misconduct of law enforcement personnel;
(6) purpose and effect of imposing sentence on defendant;
(7) impact of dismissal on community safety;
(8) impact of dismissal on public confidence in the system;
(9) the victim’s attitude toward the motion; and
(10) any other relevant factors which demonstrate that a conviction would serve no useful purpose.
The burden of setting forth factors sufficiently compelling to justify dismissal under CPL 170.40 rests squarely upon the defendant. Where the defendant does not meet this burden, the court may summarily deny the motion. (People v Schlessel, 104 AD2d 501 [2d Dept 1984].)
The defendants argue that their actions were peaceful and a sincere attempt to prevent a sacrilege. Additionally, it is argued that defendant McDaniel is a 71-year-old woman who is charged with the minor act of shouting at Father Harris. It must be noted that although the defense characterizes the defendant McDaniel’s conduct as minor, the Legislature chose to classify disturbances to religious services as a class A misdemeanor, intending to safeguard the rights of all individuals to exercise their constitutional rights. Further, the actual *308 harm that results from the defendants’ alleged actions is both tangible and intangible: tangible harm results from the halting or interruption of church services; the consequent harm, the disturbance of peaceful exercise of freedom of religion, is a serious disturbance of the rights of worshippers. The court does not view such actions, if committed, as trivial.
The court has evaluated the merits of the defendants’ argument, as well as the applicable factors enumerated in CPL 170.40. Taken collectively, the grounds that are relevant in the consideration of the defendants’ motion prove to be insufficient and do not rise to the level required for the granting of a motion to dismiss in the interest of justice. (CPL 170.40; see also, People v Clayton, supra.)
In sum, the court concludes that the defendants have failed to sustain the burden of showing factors which would compel the dismissal of the accusatory instrument in the interest of justice. A balance of the equities simply does not render unjust the continuation of this prosecution. Accordingly, the defendants’ motion to dismiss is denied.