OPINION OF THE COURT
Alan D. Marrus, J.
The defendant in this case is accused of using his computer *368 to transmit child pornography and attempting to lure a person he thought was a child to engage in deviate sexual acts. The indictment which alleges these acts of "cyber child molesting” calls into question the recently enacted New York State statute, Penal Law § 235.22 (Penal Law former § 235.22, renumbered as Penal Law § 235.23 by L 1996, ch 600, § 6), which prohibits disseminating indecent materials to minors to induce them to engage in sexual conduct. The purpose of this law was to "not allow our children to fall prey to those who would exploit them through [computer] technology”. (Governor’s Mem approving L 1996, ch 600, 1996 McKinney’s Session Laws of NY, at 1901.)
The evidence presented to the Grand Jury in this case consisted of the testimony of two witnesses, both members of the Kings County District Attorney’s Office Squad. The commanding officer of the squad testified that he was part of an investigation into the computer and satellite communication system commonly known as "America On-Line”. America OnLine is a computer service that allows the user, who has access to a computer and telephone modem, to hook up with this service and have access to the Internet as well as chat rooms. A chat room is a computer created room that the user of the service could go into with up to 23 people who have a mutual interest and can talk at that time with them.
Pursuant to this investigation, an account with America OnLine was purchased. The officer used the account or, in other words, logged onto America On-Line. The user received a disk from the service. The disk was placed into the computer which made the computer accessible or able to communicate to America On-Line. The investigator obtained an access number that was dialed through his computer, a password that allowed only him to use that account, and the name that the account was under. The screen name that the investigator selected was Tori 83. No two people can use the same screen name in the America On-Line service.
On August 21,1996, the investigator logged onto America On-Line while he was in his office at 210 Joralemon Street in Kings County. However, the investigator adopted the persona of a 13-year-old female who lives in Brooklyn when he logged onto the Internet. He then entered a chat room. After he entered the chat room, he went to check into the private room preteen, which refers to children under 13 years of age. The preteen room is a private room designed for people who want to trade in pictures of preteen children. Among numerous *369 conversations in the preteen room on August 21, 1996, the investigator had an opportunity to have a conversation with a person with the screen name Captain Jake. The investigator received an instant message from Captain Jake. Rather than go through the chat room that had 23 people in it, Captain Jake asked Tori 83 if "she” wanted to play in a private room. Tori 83 answered "sure”. Rather than go into a private room, Captain Jake engaged in an instant message conversation with Tori 83, which immediately appears on the recipient’s screen. Captain Jake asked Tori 83 if "she” was interested in older men. Captain Jake wanted to know if Tori 83 was a virgin, what she was wearing, and if she was a cop. Tori 83 told him "he’s got to be kidding, I am going to be 14 in November”.
On October 14, 1996, Tori 83 once again logged onto America On-Line while in the Kings County District Attorney’s Office. "She” once again entered a chat room and then went into the private preteen room. "She” received another instant message from Captain Jake who said "Hi, from Connecticut, married, white male”.
Captain Jake also said he was 39 plus and asked Tori 83 if she liked older men. Then he wanted to know if Tori 83 wanted to play in a private room. When Tori 83 said "yes”, Captain Jake told "her” to go into "XX Jake”. Tori 83 then went into the private room "XX Jake”, where "she” and Captain Jake had a sexually explicit conversation. During that conversation, Captain Jake informed Tori 83 that he was not just "into cyber”, he would like to meet with Tori 83.
On October 31, 1996, the investigator, under the persona of Tori 83, logged onto America On-Line and received an instant message from Captain Jake while in the "preteen room”. Captain Jake wanted Tori 83 to enter the private room of "XX Jake” again. Tori 83 did so and once inside Captain Jake asked Tori 83 what kind of sex acts "she” liked. He wanted to talk sex and talk Tori 83 through masturbation. During the conversation Captain Jake sent Tori 83 two explicitly sexual stories and three photo files.
On November 1, 1996, the investigator logged onto America On-Line and again adopted the persona of Tori 83. "She” went into a chat room and then into the private room "XX Jake”. The private room was again occupied by Captain Jake, who told Tori 83 to fondle herself and insert her fingers into her vagina. He wanted her to get her nipples hard and took her through masturbation.
Tori 83 was able to download photos sent to her by Captain Jake. Two of the photographs that were downloaded were *370 shown to the Grand Jury and placed into evidence. The photographs depicted males and apparently preteen females in sexual acts. One photograph depicts an adult male having sexual intercourse with a young preteen female and contains a collage depicting a male’s penis in various stages of penetration of a female’s vagina. The second photograph depicted a closeup view of an erect penis that has ejaculated onto the tongue of a young female.
A meeting was arranged between Captain Jake and Tori 83 for December 23, 1996, in the Tamaqua fishing station in Gerritson Beach, Kings County. On December 23, 1996, the Commanding Officer at the Office Squad had a female undercover police officer on the boat with him. The defendant pulled into the parking lot of the fishing station, approached the young female undercover officer, who was on a boat. She asked him, "Are you Captain Jake?” He said, "Yes, I am. Are you Tori?” The defendant, James Barrows, also known as Captain Jake, was then arrested. The defendant’s car was searched and found in the trunk was a container holding a brown paper bag in which was a rope, a sexual lubricant called "Wet”, and a lot of paper towels.
Based on this evidence, the Grand Jury indicted the defendant for promoting an obscene sexual performance by a child (two counts), attempted disseminating indecent material to minors in the first degree (two counts), and obscenity in the third degree (two counts). The defendant moves to dismiss the indictment on the ground that the statutes regulating this conduct are "vague or overbroad” and that they also violate the Commerce Clause of the United States Constitution. The District Attorney opposes the application.
As to the crimes promoting an obscene sexual performance by a child (Penal Law § 263.10), promoting a sexual performance by a child (Penal Law § 263.15), and obscenity in the third degree (Penal Law § 235.05), there can be no question that these statutes are constitutional. The United States Supreme Court and the New York Court of Appeals have both ruled that freedom of expression is not violated by laws which prohibit the live performance of sexual depictions of children. (See, New York v Ferber, 458 US 747.) Similarly, obscenity is not protected by the First Amendment to the United States Constitution. (See, Miller v California, 413 US 15; Memoirs v Massachusetts, 383 US 413; Roth v United States, 354 US 476.)
The constitutionality of Penal Law § 235.22, disseminating indecent material to minors in the first degree, on the other *371 hand, appears to be a question of first impression. This recently enacted statute, effective November 1, 1996, provides that:
"A person is guilty of disseminating indecent material to minors in the first degree when:
"1. knowing the character and content of the communication which, in whole or in part, depicts actual or simulated nudity, sexual conduct or sado-masochistic abuse, and which is harmful to minors, he intentionally uses any computer communication system allowing the input, output, examination or transfer, of computer data or computer programs from one computer to another, to initiate or engage in such communication with a person who is a minor; and
"2. by means of such communication he importunes, invites or induces a minor to engage in sexual intercourse, deviate sexual intercourse, or sexual contact with him, or to engage in a sexual performance, obscene sexual performance, or sexual conduct for his benefit.” (Penal Law § 235.22.)
A companion provision to this statute, Penal Law § 235.21 (3) (as added by L 1996, ch 600, § 5), which contains the identical language as the first element of section 235.22 and which creates the crime of disseminating indecent material to minors in the second degree, has been found to be constitutionally infirm. In American Libs. Assn. v Pataki (969 F Supp 160 [SD NY 1997]), the United States District Court concluded that the language violates the Commerce Clause of the United States Constitution and enjoined State prosecutors from prosecuting this section of the Penal Law.
Another Federal case which must be considered is Reno v American Civ. Liberties Union (521 US —, 117 S Ct 2329 [1997]) where the United States Supreme Court ruled that Federal statutes which prohibited "indecent transmissions” and "patently offensive displays” over the Internet violate freedom of expression guaranteed by the First Amendment.
Elements of both Federal cases come into play in this case. Here the defendant was transmitting over the Internet from outside the State of New York. As the District Court observed, "[t]he borderless world of the Internet raises profound questions concerning the relationship among the several states and the relationship of the federal government to each state, questions that go to the heart of 'our federalism.’ ” (American Libs. Assn. v Pataki, 969 F Supp, supra, at 168.) The court there went on to conclude, however, that one of the reasons Penal Law § 235.21 (3) is unconstitutional is because it "represents *372 an unconstitutional projection of New York law into conduct that occurs wholly outside New York.” (Supra, at 169.) The District Court noted, nevertheless, that the plaintiffs in that ease "do not challenge the sections of the statute that criminalize the sale of obscene materials to children, over the Internet or otherwise, and prohibit adults from luring children into sexual contact by communicating with them via the Internet.” (Supra, at 179.) Thus, in this court’s view, the District Court’s decision in American Libs. Assn. does not render Penal Law § 235.22 unconstitutional under the Federal Commerce Clause.
In the Supreme Court decision in Reno (supra), the United States Supreme Court cast doubt on any statute that would seek to regulate transmissions on the Internet that are indecent or offensive. Nevertheless, that Court made it clear that its decision had no effect on laws prohibiting transmissions of obscenity or child pornography. (521 US, at —, n 44, 117 S Ct, at 2347, n 44, supra.)
An examination of Penal Law § 235.22 indicates that the first element may run afoul of the American Libs. Assn. and Reno decisions (supra). Because it regulates Internet transmissions and does not confine prohibited transmissions to obscene and pornographic materials, that part of the statute, standing alone, might not survive constitutional scrutiny. This part of the statute must, however, be read in conjunction with the second required element, which requires conduct luring a minor to engage in sexual conduct. It is this "luring” element that, in this court’s view, saves the statute from constitutional infirmity.
An Internet user need have no fear about the nature or content of transmissions, under the statute, so long as they are not coupled with an attempt to lure a minor into sexual conduct. Taken in its entirety then, Penal Law § 235.22, which prohibits disseminating indecent material to minors in the first degree, is not "vague” or "overbroad”.
The State of New York should have the power to punish anyone who sends sexually explicit material over the Internet to a minor in New York and then seeks to lure that child to perform a sexual act within the State. Here the evidence in the Grand Jury established that the defendant transmitted child pornography and sought to induce a person he thought was a minor to engage in a sexual act. His Internet communications were followed up by his coming to New York to achieve this result. Freedom of expression is not abridged by a law prohibiting an attempt to engage in a sexually deviate act with *373 a child. Since the statute expressly prohibits such conduct, and any expression over the Internet is protected unless accompanied by such conduct, Penal Law § 235.22 is not unconstitutionally vague or overbroad.
The defendant’s motion to dismiss the indictment is, therefore, denied.