[692 NYS2d 248]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v THOMAS R. FOLEY, SR., Appellant.

Fourth Department, June 18, 1999

APPEARANCES OF COUNSEL

*Lipsitz, Green, Fahringer, Roll, Salisbury & Cambria, L. L. P.,* Buffalo (*Paul J. Cambria, Jr.* and *Roger W. Wilcox, Jr.,* of counsel), for appellant.

*Michael Angelo Arcuri, District Attorney* of Oneida County, Utica (*William M. Weber* of counsel), for respondent.

## OPINION OF THE COURT

HAYES, J.

Defendant appeals from a judgment convicting him following a jury trial of two counts each of promoting a sexual performance by a child (Penal Law § 263.15) and attempted disseminating indecent material to minors in the first degree (Penal Law §§ 110.00, 235.22). Defendant challenges the constitutionality of Penal Law § 235.22 and contends that alleged errors that occurred during trial require reversal. The judgment should be affirmed.

### I

Defendant had a computer equipped with a modem and software to enable him to gain access to the Internet. The Internet links computer users from across the world via an

international network (*see, Reno v American Civ. Liberties Union,* 521 US 844, 849). Individuals gain access to the Internet through various avenues, including Internet service providers such as America Online, CompuServe, the Microsoft Network and Prodigy (*see, Reno v American Civ. Liberties Union, supra,* at 850). An individual may obtain and transmit text, sound, pictures, and moving video images using various methods. One of those methods is the use of a "chat room". In a chat room, individuals engage in real-time dialogue, i.e., when a message is typed, it appears almost immediately on the computer screen of other individuals in the chat room. In addition, an individual can send pictures to another individual in the chat room. The chat rooms foster an exchange of information or ideas on a particular topic. Two individuals may break away from the main chat room to have a private chat. Individuals in the chat room use "screen names" of their choosing.

The Internet allows millions of individuals to gain access to a wide variety of educational and entertainment material. While the Internet has innumerable benefits, it also has some negative aspects. Pedophiles have used the Internet to engage in sexually explicit communications with minors and then have attempted to arrange sexual encounters with those minors (*see,* Governor's Mem approving L 1996, ch 600, 1996 McKinney's Session Laws of NY, at 1900 ). Penal Law § 235.22 was enacted to prevent the abuse of children over the Internet and provides as follows:

"A person is guilty of disseminating indecent material to minors in the first degree when:

"1. knowing the character and content of the communication which, in whole or in part, depicts actual or simulated nudity, sexual conduct or sado-masochistic abuse, and which is harmful to minors, he intentionally uses any computer communication system allowing the input, output, examination or transfer, of computer data or computer programs from one computer to another, to initiate or engage in such communication with a person who is a minor; and

"2. by means of such communication he importunes, invites or induces a minor to engage in sexual intercourse, deviate sexual intercourse, or sexual contact with him, or to engage in a sexual performance, obscene sexual performance, or sexual conduct for his benefit."

There are four affirmative defenses to a prosecution under Penal Law § 235.22:

"3. In any prosecution for * * * disseminating indecent material to minors in the first degree pursuant to section 235.22 of this article, it shall be a defense that:

"(a) The defendant made a reasonable effort to ascertain the true age of the minor and was unable to do so as a result of actions taken by the minor; or

"(b) The defendant has taken, in good faith, reasonable, effective and appropriate actions under the circumstances to restrict or prevent access by minors to materials specified in such subdivision, which may involve any appropriate measures to restrict minors from access to such communications, including any method which is feasible under available technology; or

"(c) The defendant has restricted access to such materials by requiring use of a verified credit card, debit account, adult access code or adult personal identification number; or

"(d) The defendant has in good faith established a mechanism such that the labelling, segregation or other mechanism enables such material to be automatically blocked or screened by software or other capabilities reasonably available to responsible adults wishing to effect such blocking or screening and the defendant has not otherwise solicited minors not subject to such screening or blocking capabilities to access that material or to circumvent any such screening or blocking" (Penal Law § 235.23 [3]).

## II

A State Trooper assigned to the Computer Crime Unit logged onto the Internet on October 28, 1996 and entered a chat room entitled "KidsofFamilySex". The Trooper used the screen name "Aimee__". Also in the chat room was a computer user, later identified as defendant, who used the screen name "JustMee". JustMee and Aimee__ engaged in a private chat. JustMee asked Aimee__ "Weana [sic] chat sex?", and Aimee__ answered "OK". Aimee__ identified herself as a 15-year-old girl who had sex with her father, while JustMee identified himself as a 51-year-old male. The conversation lasted approximately two hours, and was almost exclusively about sex. JustMee asked Aimee__ whether she had ever masturbated and how she liked having sex with her father. JustMee described how he would have sex with her, and encouraged Aimee__ to masturbate during their conversation. Aimee__ said that she lived in Utica, while JustMee said that he lived on Grand Island near Buffalo. During the conversation, JustMee sent a few pictures to Aimee__ of "preteen girls and men" engaging in sexual acts.

JustMee had three other private chats with Aimee— during the period from November 12 through 20, 1996. Each conversation lasted at least two hours, and each time Aimee— indicated that she was 15 years old. Each conversation centered around sex; JustMee would encourage Aimee— to masturbate and to describe having sex with her father. JustMee told Aimee— that he wanted to have sex with her and described how he would do so. JustMee sent Aimee— more pictures of minors engaging in sexual acts with other minors and with adults. During the third conversation, JustMee described where he lived and said that he wished they could meet, but that they would have to be careful if they did meet. Aimee— said that she had cousins in Buffalo and could possibly make the trip to Buffalo. During the fourth conversation, JustMee again discussed meeting with Aimee—; he said that they would have to be discreet and meet in a parking area at night. JustMee said they would need to make arrangements ahead of time, and they discussed the possibility of meeting over Thanksgiving weekend.

The police obtained the identity of JustMee by service of a subpoena on the Internet service provider. On November 22, 1996, JustMee and Aimee— engaged in their fifth on-line conversation. They discussed where they could meet in Buffalo. During that conversation, the police executed a no-knock search warrant at defendant's residence and found defendant typing at his computer. Defendant admitted that he had used the screen name JustMee and had several chats with Aimee—, whom he believed to be 15 years old.

### III

■ Defendant contends that Penal Law § 235.22 is unconstitutionally overbroad and vague, that it is a content-based restriction that cannot survive strict scrutiny, and that it violates the Commerce Clause. Kings County Supreme Court is the only court to have addressed the constitutionality of the statute. Ruling on a defendant's pretrial motion to dismiss, the court (Marrus, J.) found that the statute was not unconstitutionally vague or overbroad and did not violate the Commerce Clause (see, People v Barrows, 174 Misc 2d 367, 372-373). After a jury trial, Barrows was found guilty of two counts of attempted disseminating indecent material to minors in the first degree (Penal Law §§ 110.00, 235.22) and one count of promoting an obscene sexual performance by a child (Penal Law § 263.10). He then moved, pursuant to CPL 330.30, to set aside

the verdict on the ground that the statutes are unconstitutional and violate the First Amendment and the Commerce Clause. This time, the court (Demarest, J.) agreed with Barrows with respect to Penal Law § 235.22 and set aside the verdict with respect to those counts (*People v Barrows,* 177 Misc 2d 712). We conclude that Penal Law § 235.22 is not unconstitutional.

State statutes carry a strong presumption of constitutionality and should be stricken as unconstitutional only as a last resort (*see, People v Davis,* 43 NY2d 17, 30, *rearg dismissed* 61 NY2d 670, *cert denied* 435 US 998). "The traditional rule is that a person to whom a statute may constitutionally be applied may not challenge that statute on the ground that it may conceivably be applied unconstitutionally to others in situations not before the Court" (*New York v Ferber,* 458 US 747, 767). The First Amendment overbreadth doctrine is, however, one of the few exceptions to that general principle (*see, New York v Ferber, supra,* at 768). Thus, defendant may attack an overly broad statute even though, as here, his conduct "could be proscribed by a law drawn with the requisite specificity" (*New York v Ferber, supra,* at 769; *see, Alexander v United States,* 509 US 544, 555, *reh denied* 510 US 909).

The overbreadth doctrine is to be applied sparingly and only as a last resort (*see, Broadrick v State of Oklahoma,* 413 US 601, 613). It is to be applied whenever a statute "imposes a direct restriction on protected First Amendment activity, and where the defect in the statute is that the means chosen to accomplish the State's objectives are too imprecise, so that in all its applications the statute creates an unnecessary risk of chilling free speech" (*Secretary of State of Md. v Munson Co.,* 467 US 947, 967-968). However, the "mere fact that one can conceive of some impermissible applications of a statute is not sufficient to render it susceptible to an overbreadth challenge" (*Members of City Council v Taxpayers for Vincent,* 466 US 789, 800). Further, an individual may challenge a statute as overbroad "only when the statute's unconstitutional reach is substantial and the statute is incapable of a reasonable limiting construction" (*People v Hollman,* 68 NY2d 202, 208).

The Legislature's objective in enacting Penal Law § 235.22 was to protect children from "high-tech cybersex abuse and actual sexual abuse" (Governor's Mem approving L 1996, ch 600, 1996 McKinney's Session Laws of NY, at 1901). The statute has two prongs, both of which must be met in order for an individual to be convicted under the statute. The first prong

involves the dissemination of graphic images to a minor depicting nudity, sexual conduct or sadomasochistic abuse that is "harmful to minors" (Penal Law § 235.22 [1]). The statute provides:

"6. 'Harmful to minors' means that quality of any description or representation, in whatever form, of nudity, sexual conduct, sexual excitement, or sado-masochistic abuse, when it:

"(a) Considered as a whole, appeals to the prurient interest in sex of minors; and

"(b) Is patently offensive to prevailing standards in the adult community as a whole with respect to what is suitable for minors; and

"(c) Considered as a whole, lacks serious literary, artistic, political, and scientific value for minors" (Penal Law § 235.20 [6]).

That definition mirrors the permissible standard set forth in *Miller v California* (413 US 15, 24, *reh denied* 414 US 881). The second prong is the "luring" prong. It prohibits the conduct of importuning, inviting, or inducing a minor to engage in sexual activity.

Penal Law § 235.22 is a precise means of accomplishing the Legislature's objectives. Under the statute, adults may send sexual images to another adult, and may also invite that adult to engage in sexual relations without risking prosecution under the statute. Only when an individual sends graphic images to a minor and then attempts to lure that minor into sexual activity does he risk conviction under the statute. Because of the two-pronged nature of the statute, communication between adults would not be chilled (*cf., Sable Communications v Federal Communications Commn.,* 492 US 115, 131). Contrary to defendant's contention, the statute is not similar to the Federal Communications Decency Act of 1996 (CDA) recently analyzed by the Supreme Court in *Reno v American Civ. Liberties Union* (521 US 844, *supra*). The CDA prohibited the knowing transmission of obscene or indecent messages to any recipient under age 18, and prohibited the knowing sending or displaying of patently offensive messages in a manner that is available to a person under age 18 (*see, Reno v American Civ. Liberties Union, supra,* at 858-860). The CDA did not define "indecent" or "patently offensive", and thus there would be uncertainty among speakers concerning the meaning of those terms (*see, Reno v American Civ. Liberties Union, supra,* at 871). In contrast, Penal Law § 235.22 defines what graphic im-

ages would be "harmful to minors" (*see,* Penal Law § 235.20 [6]) and proscribes specific acts by individuals.

Defendant sets forth two examples of impermissible applications of the statute that would render it unconstitutionally overbroad. However, those situations would not occur with such frequency that the statute should be considered overbroad (*see, e.g., Members of City Council v Taxpayers for Vincent, supra,* at 800-801). Whatever overbreadth might exist in this statute can be cured by a case-by-case analysis (*see, New York v Ferber, supra,* at 773-774). Any impermissible applications of the statute would represent only a tiny fraction of the conduct within the statute's reach and thus the overbreadth is not substantial (*see, People v Hollman, supra,* at 209; *see also, New York v Ferber, supra,* at 773-774).

Defendant further contends that Penal Law § 235.22 is impermissibly vague. The "void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement" (*Kolender v Lawson,* 461 US 352, 357; *see, Village of Hoffman Estates v Flipside, Hoffman Estates,* 455 US 489, 498, *reh denied* 456 US 950; *People v First Meridian Planning Corp.,* 86 NY2d 608, 621-622).

■ Defendant contends that the following terms are vague: "sexual contact", "importunes, invites or induces", "sexual conduct", and "harmful to minors". We disagree. "Sexual contact", while not defined in Penal Law § 235.22, is defined elsewhere in the Penal Law as "any touching of the sexual or other intimate parts of a person not married to the actor for the purpose of gratifying sexual desire of either party. It includes the touching of the actor by the victim, as well as the touching of the victim by the actor, whether directly or through clothing" (Penal Law § 130.00 [3]). In addition, the meaning of "sexual contact" can be inferred from the other prohibited conduct, i.e., sexual intercourse and deviate sexual intercourse. The terms "importunes, invites or induces" are common terms with common ordinary meanings (*see generally, People v First Meridian Planning Corp., supra,* at 622; *see also, Beauharnais v Illinois,* 343 US 250, 253, *reh denied* 343 US 988). "Sexual conduct" is defined as "acts of masturbation, homosexuality, sexual intercourse, or physical contact with a person's clothed or unclothed genitals, pubic area, buttocks or, if such person be a female, breast" (Penal Law § 235.20 [3]). All the terms within

that definition are commonly used terms and are not vague. Finally, "harmful to minors" is defined in Penal Law § 235.20 (6) and has been held sufficient to give adequate notice to individuals (*see, Ginsberg v State of New York,* 390 US 629, 643, *reh denied* 391 US 971).

## IV

█ Defendant also contends that Penal Law § 235.22 is an impermissible content-based restriction on speech. A statute that is enacted for the purpose of restraining speech on the basis of its content presumptively violates the First Amendment (*see, City of Renton v Playtime Theatres,* 475 US 41, 46-47, *reh denied* 475 US 1132; *Matter of Town of Islip v Caviglia,* 73 NY2d 544, 556). The purpose of the statute here is to protect children from the primary effects of the transmission of offensive speech, and thus the statute is a content-based restriction on speech (*see, e.g., Reno v American Civ. Liberties Union, supra,* at 868, 871). In order for the statute to remain valid, it must be a precisely drawn means of serving a compelling State interest (*see, Consolidated Edison Co. v Public Serv. Commn.,* 447 US 530, 540). In addition, "when government regulation designed to carry out a legitimate and important State objective would incidentally burden free expression, the government's action cannot be sustained unless the State can prove that it is no broader than needed to achieve its purpose" (*People ex rel. Arcara v Cloud Books,* 68 NY2d 553, 558).

It is well settled "that a State's interest in 'safeguarding the physical and psychological well-being of a minor' is 'compelling'" (*New York v Ferber, supra,* at 756-757, quoting *Globe Newspaper Co. v Superior Ct.,* 457 US 596, 607; *see also, Sable Communications v Federal Communications Commn., supra,* at 126). For the same reasons that we concluded that Penal Law § 235.22 is not overbroad, we also conclude that the statute is a precisely drawn means of serving a compelling interest, and is no broader than necessary. The statute is thus constitutional under the First Amendment.

## V

█ Defendant further contends that Penal Law § 235.22 violates the Commerce Clause. The Commerce Clause is a grant of authority to Congress to "regulate Commerce * * * among the several States" (US Const, art I, § 8, cl [3]). The Commerce Clause "embodies a negative command forbidding the States to discriminate against interstate trade" (*Associated*

*Indus. v Lohman,* 511 US 641, 646; *see, Homier Distrib. Co. v City of Albany,* 90 NY2d 153, 158). Where local legislative objectives are credibly advanced in support of a statute and there is no patent discrimination against interstate trade, the statute will be upheld " 'unless the burden imposed oñ such commerce is clearly excessive in relation to the putative local benefits' " (*City of Philadelphia v State of New Jersey,* 437 US 617, 624, quoting *Pike v Bruce Church, Inc.,* 397 US 137, 142; *see also, Raymond Motor Transp. v Rice,* 434 US 429, 440). The purpose of Penal Law § 235.22 was not to regulate commerce, but to protect the children of this State who use the Internet. The statute is not an economic protectionist measure, but rather is directed at a legitimate local concern.

In *American Libs. Assn. v Pataki* (969 F Supp 160), the District Court for the Southern District of New York granted plaintiffs' motion for a preliminary injunction, finding that Penal Law § 235.21 (3) violated the Commerce Clause. That statute is similar to the first prong of Penal Law § 235.22, but it does not include the second "luring" prong found in Penal Law § 235.22 (2). The inclusion of the second prong in Penal Law § 235.22 narrows its scope and lessens any burden on commerce. Indeed, we cannot conceive of any legitimate commerce involving the sending of graphic images to minors while at the same time attempting to lure them into engaging in sexual activity. We conclude that any incidental effects that Penal Law § 235.22 may have on commerce are not unduly burdensome in relation to the compelling interest of the State in protecting children.

## VI

■ Defendant contends that various alleged errors during trial require reversal. We disagree. Defendant failed to preserve for our review his contention that County Court's charge to the jury on Penal Law § 235.22 was erroneous (*see,* CPL 470.05 [2]; *People v Hill,* 236 AD2d 799, 800, *lv denied* 89 NY2d 1036). In any event, defendant's contention is without merit. The statute does not require the People to prove that defendant intended his communication to be received by a minor.

Defendant's conviction under Penal Law § 263.15 is based on legally sufficient evidence and the verdict is not against the weight of the evidence (*see, People v Bleakley,* 69 NY2d 490, 495). The People submitted sufficient proof that the graphic images sent by defendant were pictures of actual children and had not been altered. The jury had the pictures before it to

review, and its determination that the pictures represented actual children is supported by the record.

■ The court did not improperly restrict the cross-examination of the State Trooper regarding his alcohol addiction. While it was proper for defense counsel to cross-examine the Trooper concerning his use of alcohol during the computer conversations with defendant, it was improper for counsel to cross-examine him regarding his alcohol use where such alcohol use had no relation to his ability to recall or perceive the events in question (*see, People v Freeland,* 36 NY2d 518, 525; *People v Perotti,* 233 AD2d 936, *lv denied* 89 NY2d 945; *People v Van Nostrand,* 217 AD2d 800, 802, *lv denied* 87 NY2d 851).

Prior to trial, defense counsel was informed that the Trooper had been arrested for assaulting his wife, resulting in his suspension from work. Counsel sought discovery of the Trooper's personnel file. Police personnel records are confidential, but they may be turned over to a defendant if they contain exculpatory information (*see, People v Gissendanner,* 48 NY2d 543, 547-548). Here, the court conducted an in camera inspection of the file and determined that it contained no exculpatory material. In any event, even if the material was exculpatory and should have been disclosed, there is no reasonable possibility that the failure to disclose that information contributed to the verdict (*see, People v Vilardi,* 76 NY2d 67, 77). Defendant was aware of the arrest and the facts surrounding it, and he used that information to cross-examine the Trooper (*see, People v Cortijo,* 70 NY2d 868).

The court properly admitted into evidence a computer disk containing the conversations between the Trooper and defendant as well as the graphic images sent by defendant to the Trooper. The contents of the computer disk were unique, and the Trooper's identification of the disk was sufficient evidence of its accuracy and authenticity (*see, People v Julian,* 41 NY2d 340, 343; *People v Taylor,* 206 AD2d 904, 905, *lv denied* 84 NY2d 940).

Finally, the court's charge to the jury with respect to the definition of "performance" as that term is used in Penal Law § 263.15 adequately conveyed the law to the jury with respect to the elements of the crime of promoting a sexual performance by a child (*see generally, People v Woods,* 41 NY2d 279, 283). In any event, the court's supplemental charge to the jury eliminated any prejudice to defendant that may have resulted from the initial charge (*see, People v Dean,* 56 AD2d 242, 253, *affd* 45 NY2d 651, *rearg denied* 46 NY2d 940; *People v Strong,*

256 AD2d 427, *lv denied* 93 NY2d 858; *People v Cannon,* 168 AD2d 356, *lv denied* 77 NY2d 904).

## VII

Accordingly, the judgment should be affirmed. (Appeal from Judgment of Oneida County Court, Dwyer, J.—Promoting Sexual Performance by Child.)

PINE, J. P., PIGOTT, JR., SCUDDER and BALIO, JJ., concur.

Judgment unanimously affirmed.